HON. CHARLES W. WHIPPLE, C. J.
HON. WARNER WING,
HON. GEORGE MILES,
HON. SANFORD M. GREEN,  } JUSTICES.
HON. EDWARD MUNDY,

—————00000—————

## THE BOARD OF SUPERVISORS OF THE COUNTY OF ST. JOSEPH *v.* COF-FENBURY *et al.*

Where, in an action of debt on a bond, the declaration alleged that the defendants acknowledged themselves to be held and firmly bound unto "the board of supervisors of the county of St. Joseph," and by the bond produced on the trial they were bound unto "the supervisors of the county of St. Joseph," the court held there was a variance between the bond declared on and the one produced, and that plaintiffs should have averred in their declaration that the bond was made to them by the name mentioned in the bond.

A bond in these words, "Know all men by these presents, that I, A. B., principal, and C. D., E. F., and G. H., sureties, *are* held," &c., "for the payment of which sum well and truly to be made, we bind ourselves, our heirs, executors and administrators, *severally*, firmly by these presents," is a joint as well as several bond.

A bond given by the treasurer of a county for the faithful performance of his official duties, to the board of supervisors of the same county, is a good and valid bond, although there is no statute requiring such a bond to be given.

CASE reserved from St. Joseph Circuit Court.

*Riley*, for the plaintiffs.

*Gurney*, for the defendants.

*By the court,* MUNDY, J. This was an action upon a treasurer's bond, brought in the circuit court of St. Joseph county, in the name of the board of supervisors of the county of St. Joseph. In setting out the bond, the declaration alleged, that "the defendants acknowledged themselves to be held and firmly bound unto *the board of supervisors of the county of St. Joseph.*"

The bond is, in the obligatory part of it, in these words: "Know all men by these presents, that I, Jacob W. Coffenbury, principal, and Alonso R. Hunt, A. Woodworth, Calvin Bronson, &c., of the county of St. Joseph and State of Michigan, are held and firmly bound unto *the supervisors of the county of St. Joseph,* aforesaid, in the penal sum of ten thousand dollars, lawful money of the United States, for the payment of which sum well and truly to be made, we bind ourselves, our heirs, executors and administrators, *severally,* firmly by these presents. Signed with our hands, and sealed with our seals, this 25th day of December A. D. 1844." The reading of the bond in evidence, was objected to: 1. For variance between the bond and declaration— the declaration being by the board of supervisors of the county of St. Joseph, while the obligation in the bond is *to the supervisors* of the county of St. Joseph. 2. That the bond is several and not joint. 3. That the board of supervisors had no power to receive, or sue a bond from the county treasurer, and that the bond is a nullity.

The plaintiffs submitted to a nonsuit, with leave to move to set it aside, and these questions are reserved for our consideration. There would seem to be a well founded objection on the ground of variance. The bond is alleged to have been given to the plaintiffs in their corporate name, whereas it was given to the supervisors of the county of St. Joseph. This, however, is amendable. The plaintiffs may declare in their corporate name, and aver that the bond was made to them in the name mentioned in it. 13 John. R. 38; 10 Mass. 367.

The bond, upon a true construction of its language, is I think joint as well as several. Coffenbury as principal, and the others as sureties, in the commencement of the bond, declare that they are held and firmly bound unto the supervisors of the county of St. Joseph. This is the acknowledgment of a joint obligation; in the *solvendum* part of the bond, they bind themselves *severally* to pay.

This is no more than saying, we are held and firmly bound in a cer-

tain sum, and we and each of us bind ourselves to pay. We should not put upon the bond a construction which would make necessary a multiplicity of suits, unless such was the evident intention of the par- ties. And we cannot suppose that they intended to make it necessary, in the legal enforcement of the bond, that each should be sued sepa- rately. "I promise to pay," in a note signed by a plurality of persons, whether as principals or as principal and sureties, is treated as a joint and several note. Story on Bills, 57. "We jointly *or* severally," is construed to mean, we jointly *and* severally. *Id.*

But it is said, that the supervisors had no power to require or receive a bond from the treasurer, and that it is a nullity.

Owing to inadvertence in legislation, there is no express direction that the bond should have been given to the supervisors of the county. By the Revised Statutes of 1838, p. 42, sec. 20, the treasurer is required to give a bond; and that section was in force when the bond was given. By the next section, he is directed to give the bond to the county com- missioners of the county. By the act of 1842, Sess. L. 1842, p. 22, the office of county commissioner was abolished, and the supervisor system adopted; but the legislature, while they imposed upon the board of supervisors all the powers and duties of the board of county commissioners, omitted to make, in terms, an alteration in the law, so as to require the treasurer to give his official bond to the supervisors.

Inasmuch as the treasurer was required, before entering upon the duties of his office, to give bond, and as the supervisors were by law substituted in the place of the commissioners, clothed with all their powers and duties, I think we may well say, that the bond was properly given to them. But upon this point we are satisfied that, aside from any statutory provision, the bond was properly given, and is valid and binding upon the defendants.

It was a voluntary bond, given to the proper guardians of the inte- rests of the county, to secure the faithful discharge of official duties by the financial officer of the county; and upon principles of public policy, as well as by adjudged cases, it is a valid obligation.

In 2 Lord Raymond, 1459, it was held that, though an executor is not obliged to give bail in error, yet the court may well take it; and if he will voluntarily enter into such a recognizance, it shall bind him.

In the case of the United States *v.* Tingey, *5* Peters *115,* it was

held, that a voluntary bond taken by authority of the proper officers of the treasury department, to whom the disbursement of public moneys is entrusted, to secure the fidelity in official duties of a receiver or agent for disbursing of public moneys, is a binding contract between him and his sureties and the United States; although such bond may not be prescribed or required by any positive law. The right to take such a bond is an incident to the duties belonging to such a department; and the United States being authorized in a political capacity to take it, there is no objection to its validity in a moral or legal sense. In 7 Conn. R. 543, it was held that a bond given by a town collector, for the faithful performance of his duty, without any provision of law requiring it, was a valid bond. The court say: "The collector is not required to give a bond, nor are the selectmen authorized to take such bond. There is, indeed, no law directing that a bond shall be taken in such a case. It is not illegal in its nature, nor founded upon any illegal consideration. A collector is an authorized agent to collect moneys due the town. What forbids, then, the giving or taking a bond to secure the town?"

The same doctrine was held in Pennsylvania in regard to a prothonotary's bond. 6 Binney, 292.

It must be certified to the circuit court for the county of St. Joseph, as the opinion of this court, that the bond is valid; that it was properly given to the supervisors of the county of St. Joseph, and that an action may be brought thereon by the board of supervisors of such county.

*Certified accordingly.*