COMMISSIONERS OF MISSOULA COUNTY, respondents, *v.* W. J. McCORMICK ET AL., appellants.

BOND OF COUNTY TREASURER — *How approved.* — The approval of the bond of the county treasurer, as provided by art. VI, sec. 87, of the Codified Statutes, must be by the full board, or it must be made to appear affirmatively that its approval otherwise was a case within the exception provided by statute.

NOT RETROSPECTIVE. — An official bond will not be held to be retrospective unless expressly so stated, and sureties thereon will not be held responsible thereon for default made before signature.

CHECKS NOT MONEY. — A board of county commissioners has no right or authority, in their settlement with treasurer, as provided by statute, to accept and count as money the checks of third parties.

Case of *Missoula County* v. *Edwards*, 3 Mont. 60, reaffirmed.

*Appeal from Second District, Missoula County.*

E. W. & J. K. TOOLE, for appellants.

This was an action brought by the respondents upon the official bond of W. G. Edwards, late treasurer of Missoula county. A demurrer was interposed by the defendants in the court below, and overruled. This we think was error.

It will be assumed that the "board of county commissioners" is not a natural person. If it is a corporation, it must allege how it was created; a failure to do this omits one of the elements of a good cause of action. The want of capacity to sue is available on a general demurrer. *Carhart* v. *Montana M. L. & M. Co.* 1 Mont. 245.

2. The answer of the appellants denies the allegations

of the complaint as to the time when the alleged default of the treasurer occurred, and sets up affirmative matter showing that the default of said treasurer occurred long prior to the execution and delivery of the bond sued on. This is charged in plain, concise and unambiguous terms.

3. The answer shows that prior to the execution and delivery of the bond sued on, the board of county commissioners had examined the books, papers, etc., of said treasurer, reported the same correct, when in truth and in fact the said treasurer was then in default, and had fraudulently appropriated the sum of $1,600 to his own use. That said board thereby represented the management of said officer to have been prudent and honest, and that the defendants relied upon said report and representations and were thereby induced to become sureties upon said bond; and that the board of county commissioners knew that their report was false.

Upon the second proposition, that the bond sued on does not cover past deficiencies and defaults, unless the law expressly authorizes it and it is inserted in the bond, we cite the following authorities: *Myers* v. *United States*, 1 McLean, 493; *United States* v. *Spencer*, 2 McLean, 405; *Farrar* v. *United States*, 5 Pet. 373; *United States* v. *Linn et al.* 1 How. (U. S.) 104; *Postmaster-General* v. *Nowell*, 1 Gilp. 106; *The County of Mehaska* v. *Ingalls*, 16 Iowa (Withrow), 81; *Bessinger* v. *Dickinson*, 20 Iowa (Withrow), 261; *Vivian* v. *Otis*, 24 Wis. 518 (1 Am. Dec. 199); *County of Fontenac* v. *Breden*, 17 Grant Ch. 645.

If the money converted by the treasurer remained in his hands at the time of the execution of the new bond, we do not deny the liability of the sureties of the new bond under the authorities just cited; but this fact must be made to appear before such liability attaches. And if the complaint averred it, the answer denies it. *United States* v. *Linn*, 1 How. (U. S.) 104; *United States* v. *Boyd*, 15 Pet. 187.

The answer alleges that the default occurred prior to

the execution of the bond sued on, and the same was not denied. Judgment should have been for defendants.

Upon the third proposition, that the bond sued on was obtained by the fraudulent and false report of the board of county commissioners, we submit the following:

1st. The board of county commissioners acted within the scope of their authority when they examined the papers, books, moneys, etc., of the county treasurer, and made their report on the same. R. S. Mont. p. 554, sec. 84; id. p. 556, sec. 88.

The securities had a right to look to the provisions of this statute and to calculate their liability, on the presumption that the duties enjoined on the treasurer had been up to that time faithfully and prudently discharged. The plaintiff is therefore chargeable with the consequences of its own neglect or breach of duty. *The People* v. *Jansen,* 7 Johns. 339.

It is a well settled principle of law that persons proposing to become sureties to a corporation for the good conduct and fidelity of an officer to whose custody its moneys, notes, bills and other valuables are intrusted, have the right to be treated with perfect good faith. If the obligees are aware of secret facts materially affecting or increasing the obligation of the sureties, the latter are entitled to have these facts disclosed to them. Morse on Banks, p. 226.

Again: Where any act has been done by the obligees that may injure the surety, the court is very glad to lay hold of it in favor of the surety. *Law* v. *East India Co.* 4 Ves. 824; Brandt on Guaranty and Suretyship, sec. 79.

Under the averments of this answer three of the defenses set up are: That the board of county commissioners had examined the account of this treasurer (an act authorized by law), and found it correct, and so published to the world a report of the same (as required by law); that said commissioners knew that the same was false, but that the sureties, relying upon this statement, as they had a right to do, executed the bond sued on; that they

would never have executed the same if it had not been for such representations. This was a perfect defense if proven.

Wherever there is any *misrepresentation* or *concealment* from the surety of any material fact, which, had he been aware of, he might not have entered into the contract of suretyship, it will thereby be rendered invalid, and the surety will be discharged from his liability. See note to *Reese* v. *Barrington*, 2 Lead. Cases in Equity, 707.

Mr. Justice Story takes even broader grounds than this. 1 Story's Eq. Jur. sec. 215. The learned judge cites the case of a party who, knowing himself to have been cheated by his clerk, concealed the fact, applied for security in such a manner and under such circumstances as held out the clerk as one whom he considered as a trustworthy person, and thereby induced another to become his surety. The contract of suretyship thus obtained was held to be void; the silence, under such circumstances, being treated as expressive of a trust and confidence held out to the public equivalent to an affirmation.

But here is a case where the actual affirmation of honesty and trustworthiness is made, and made as in this case, as shown by the averments, when it was known to be false. The effect of this was to inspire the public with confidence in the treasurer; to disarm suspicion and to prevent inquiry. The loss occasioned by the fraudulent appropriations of Edwards, their treasurer, of the moneys, must fall upon either the county or his sureties. The latter are free from blame; they acted in the matter with reasonable prudence and discretion. They relied upon the truth of representations made by those having the right to speak for the county. These representations are alleged to be false, and the allegations held immaterial by the court below. See *Graves* v. *The Lebanon National Bank*, 10 Bush (Ky.), 23 *et seq.* These principles are alike applicable to public officers. *People* v. *Jansen*, 7 Johns. *supra*, 339.

But where is any allegation that the board of county

commissioners are public officers? or that Missoula county is a corporation? The board of county commissioners is the tribunal or body that made the representations, and the board of county commissioners is the obligee in the bond. If Missoula county was shown to be an organized county, then the court *might* take judicial notice that it was a body corporate and politic. *Not otherwise.* R. S. Mont. p. 173, sec. 25; id. sec. 335, p. 642.

By sec. 337, Revised Statutes of Montana, it is provided that the powers of a county as a body corporate and politic shall be exercised by a board of county commissioners therefor. It will be observed that the complaint in this case does not show that there ever was a board of county commissioners of Missoula county elected, qualified or appointed, or who, if any one, composed it.

4. The judgment in this case was erroneous, and ought to be reversed for another reason, to wit: The sureties in this bond obligated themselves respectively in the following sums:

| | |
|---|---:|
| W. J. McCormick in the sum of | $2,000 |
| W. E. Bass in the sum of | 2,000 |
| J. M. Minesinger in the sum of | 2,000 |
| J. M. Bunnley in the sum of | 2,000 |
| Robt. Linder in the sum of | 1,000 |
| John Rankin in the sum of | 1,000 |
| Patrick McGrath in the sum of | 2,000 |
| Making in the aggregate | $12,000 |

The judgment rendered is against all the defendants for $3,442.94 and ten per cent. interest. This authorizes an execution against the property of any one of the defendants for that amount; is in violation of their obligation, and not supported by the pleadings. See Transcript, p. 80.

We submit that the answer of appellants was a good one — a square denial of the material allegations of the

complaint. Supplemented by affirmative allegations, entitled them to a trial upon the merits, and that no answer is ever considered frivolous, entitling a party to a judgment on the pleadings, where a *bona fide* defense is sought to be pleaded. If, in this case, the court was of opinion that the defense was improperly pleaded, it should have permitted the party to amend. But it seems that the court treated the matter as properly pleaded, but no defense.

A. E. MAYHEW, District Attorney, for respondent. No brief filed.

CONGER, J. For a cause of action the complaint in this case alleges that on the 4th day of August, 1873, the defendant, W. G. Edwards, was duly elected to the office of county treasurer of Missoula county, and afterwards, on the 2d day of March, 1874, presented his official bond as such treasurer to the board of county commissioners, which said bond was duly approved and recorded according to law. That on the 12th day of July, 1875, the defendant Edwards, as such treasurer, presented another and a different bond to the chairman of the said board of county commissioners, which bond was by him and the clerk of said board, on the same day, duly approved, filed and entered of record.

The following extract from the new bond explains clearly its object: "And whereas the said William G. Edwards is desirous of releasing certain persons who became his sureties on his official bond, and in order to effect that purpose, he now purposes executing this his new official bond as treasurer of said Missoula county."

This bond further provides, among other things, "that the said William G. Edwards and his deputies shall pay, according to law, all moneys which may come into his hands as treasurer."

The complaint further alleges that, after the 12th day

of July, 1875, and after the receiving, accepting and approval of said second official bond by the board of county commissioners, and between the 12th day of July, 1875, and the 6th day of March, 1876, the said Edwards, as such treasurer, received various sums of money, amounting to about the sum of $20,000, the same being part of the taxes and licenses received in the county of Missoula for the years 1875 and 1876.

And further, it is alleged that after the filing and approval of the said second official bond, and during the years 1875 and 1876, the said Edwards, as treasurer, did, fraudulently and in breach of his official trust, convert and appropriate to his own individual use and purposes the sum of $2,475 of said moneys so collected by him, the same being a portion of the money belonging to the said county of Missoula, and which said sum of money said Edwards, as such treasurer, has failed to pay over to his successor in office, Edwards' term of office having expired on the 5th day of March, 1876.

It is shown by the record in the cause that, on the 9th day of March, 1876, the sureties on the bond of Edwards were duly notified of the default of their principal, and a demand was made upon them to make good to the county the amount of the deficiency in his accounts. The sureties, who are defendants in this action, failed and refused to comply with such demand. Whereupon this action was brought to recover upon the bond the said sum of $2,475.

A demurrer was interposed, which was overruled by the court, and on the 13th day of November, 1879, the defendants appeared in the action and filed their answer to the plaintiff's complaint, and "Admit that they executed the bond now in suit, but that it was executed at the time and in the manner and under the circumstances in this answer set forth. Deny that the said W. G. Edwards, or any other person, ever presented the bond in suit to the board of county commissioners of Missoula county, Montana territory, for their approval or accept-

ance, on the 12th day of July, 1875, or at any other time prior to the 7th day of September, 1875. Deny that the bond in suit was received, approved or accepted as the official bond of W. G. Edwards or otherwise by the board of county commissioners of said Missoula county on the 12th day of July, 1875, or at any other time prior to the 7th day of September, 1875. Deny that on the said 12th day of July, 1875, or at any other time prior to the 7th day of September, 1875, the said bond now in suit was received, approved or acted upon, or treated, whether duly or otherwise, by the said board of county commissioners of Missoula county, as the official bond of W. G. Edwards, treasurer, whether in place of the first bond of the said W. G. Edwards, treasurer, or otherwise. Deny that after the acceptance or approval of the bond in suit by the board of county commissioners of said Missoula county, whether between the 12th day of July, 1875, or the 6th day of March, 1876, or during any other time whatever, after the acceptance or approval of the bond in suit by said board of county commissioners, that said W. G. Edwards, as treasurer of said county, collected or received into his hands the sum of $20,000 belonging to said county of Missoula, whether for taxes, licenses or from any other source, or that he collected or received into his hands at all, after the acceptance or approval of said bond as aforesaid, any sum or sums of money whatever belonging to said county of Missoula greater than the sum of $17,600, whether as treasurer or otherwise, whether from taxes, licenses or from any other source. Deny that said W. G. Edwards, treasurer as aforesaid, did, during the years 1875 and 1876, or either of said years, or at any other time after the acceptance or approval of said second bond, the one now in suit, whether fraudulently and in breach of his trust as such treasurer, or otherwise, convert or appropriate to his own use or benefit the sum of $2,475 of said county money collected by him as treasurer as aforesaid, or that he converted or appropriated to his own use or benefit

any sum whatever of said county money greater than
the sum of $484. Deny that, after the acceptance or
approval of the bond now in suit, the said W. G.
Edwards, treasurer as aforesaid, converted or appropriated to his own use, or for any other purpose, any sum
or sums of money belonging to said county of Missoula,
or collected by him as treasurer, greater than the sum of
$484. Deny that there is now due or unpaid from these
defendants to plaintiff the sum of $2,475, or any other
sum whatever.

"For a further answer and second defense, defendants
aver that, prior to the execution of the bond in suit, the
said defendant, W. G. Edwards, had been elected treasurer of Missoula county, Montana territory, and as such
treasurer had filed his official bond, which had been properly approved in the manner prescribed by law; that after
the filing and approval of said official bond, and prior to
the execution of the bond in suit, two of the sureties on
said official bond gave notice and applied to be released
from said bond. That in consequence of the withdrawal
of said sureties from such official bond, it became necessary for the said W. G. Edwards, as such county treasurer as aforesaid, to file a new and second bond. That
in order to execute and file said new official bond,
the one now in suit, the said W. G. Edwards applied
to the defendants to sign and execute the said bond
with him, and to become his sureties thereon. That in
order to induce these defendants to sign said bond and
become his sureties thereon, the said W. G. Edwards
stated and represented to these defendants that there
was no danger to be incurred in so doing; that he
was not indebted or in default to said county of Missoula; that he had in his hands all of the moneys belonging to said county, and all other moneys for which he
was responsible as such county treasurer, and that the
same were being safely kept. That the defendants, relying on the truth of these representations, made to them

by the said W. G. Edwards, treasurer as aforesaid, and believing them to be true, were induced thereby to sign the bond now in suit, and to become the sureties of the said W. G. Edwards thereon. Defendants further aver that all of the aforesaid representations made to them by the said W. G. Edwards, treasurer as aforesaid, were false, and were known to him to be false at the time he made them; that the said representations were artfully and fraudulently made by the said W. G. Edwards, for the purpose of deceiving the defendants, and to induce them to execute the bond in suit, as his sureties thereon; that the defendants were deceived thereby, and by said fraud and deception were induced to sign the bond in suit. Defendants aver that they are informed and believe that at the time the said W. G. Edwards, treasurer as aforesaid, made the representations aforesaid to these defendants, and for more than three months prior thereto, he, the said treasurer, was in default for moneys belonging to said county of Missoula, and intrusted to his keeping and custody as such county treasurer; and that prior to the time he made the representations to these defendants as aforesaid, he, the said W. G. Edwards, county treasurer as aforesaid, had fraudulently appropriated to his own use and benefit large sums of money belonging to said county of Missoula, and which had been placed in his care and custody as such county treasurer; and that at the time the bond in suit was signed by them, these defendants, said sums of money appropriated by said treasurer as aforesaid had not been repaid or replaced. Defendants further aver that at the time they signed the bond in suit, it was understood and expected by them that before said bond would be accepted or approved by the said board of county commissioners of said Missoula county, that the said board of county commissioners would fully examine all books, papers and money in the custody of, or under the control of, the said W. G. Edwards as such county treasurer, and see if they were cor-

rect, and in case they were not so found correct, the bond in suit would not be approved or accepted. Defendants further aver that the bond now in suit was presented to the said board of county commissioners on the 7th day of September, 1875; and at that time, and prior to the acceptance and approval of said bond by said board of county commissioners, the said board of county commissioners proceeded to examine, and did examine, the books, papers and moneys of the said W. G. Edwards, as such county treasurer, and after such examination represented, and caused to be entered in the minutes of their proceedings, an order or entry to the effect that they had examined the books and accounts of said treasurer and the moneys reported to be in the hands of said treasurer and belonging to said Missoula county, and that they had found the same to be correct and properly accounted for. That the report of the board of county commissioners, made as aforesaid, was such as to induce the public to believe that the said treasurer had prudently and honestly administered the duties of his office, and that he was honest and trustworthy. That the defendants, believing the report of the board of county commissioners to be true, and relying on the truth of the same, consented and permitted the bond in suit to be presented for acceptance and approval, and that the same was then and there accepted and approved as the official bond of the said W. G. Edwards as county treasurer.

"Defendants aver on information and belief that at the time of the examination of the books, papers and moneys as aforesaid, and at the time of the acceptance of and approval of the bond now in suit, the said county treasurer had appropriated and converted to his own use and benefit a large sum of county money belonging to said Missoula county, and intrusted to the care and custody of the county treasurer; that said sum appropriated and converted to his own use by said county treasurer, W. G. Edwards, was about the sum of $1,600, and that

at the time that the bond in suit was accepted and approved, said sum had not been repaid, or any part thereof, but that the said treasurer was then in default to said county for said amount. Defendants further aver that they are informed and believe that at the time of the examination of the books, accounts and moneys of the said county treasurer, W. G. Edwards, as aforesaid, and at the time the same was reported to be correct by the said board of county commissioners, the said board of county commissioners knew that the report was not correct, and that the said treasurer, W. G. Edwards, was a defaulter, and did not produce for examination or properly account for the sum of money belonging to Missoula county, and which his books showed should be in his hands as such county treasurer. That the said treasurer, W. G. Edwards, at that time presented to the board of county commissioners, as a portion of the county funds for which he was accountable as such treasurer, a check on the Missoula National Bank, drawn in favor of the said W. G. Edwards, by one D. J. Welch. That said board of county commissioners did not examine said check as to its being genuine, or make any effort to find out if said check would be paid on presentation at said bank, but received the same and counted it as a portion of the county funds reported by said county treasurer as being in his hands as aforesaid. Defendants aver that said check was not money or a portion of the county funds for which said county treasurer, W. G. Edwards, was responsible as such county treasurer, and that the fact was known to the said board of county commissioners at the time they made and entered their report aforesaid, and that it showed upon the face of the transaction that the said Edwards was in default to the county of Missoula, for county funds unlawfully appropriated and used by him, and remaining unpaid at the time the bond in suit was accepted and approved by the said board of county commissioners."

Whereupon the district attorney moved the court for judgment on the pleadings, for the reasons:

1st. "That the denials in defendants' answer to the complaint herein are evasive and immaterial; and

2d. "That the new matters set up as a defense are redundant, irrelevant, sham, immaterial and frivolous, and constitute no defense."

This motion coming on to be heard was sustained by the court, and judgment ordered to be entered in said cause in favor of the plaintiff and against said defendants for the sum of $3,442.94, and costs of suit.

To this order, and judgment of the court entered in compliance therewith, the defendants at the time duly excepted, and have removed the cause to this court for review on appeal.

The answer of defendants admits the execution and delivery of the bond, and alleges that defendants were induced to become sureties thereon by reason of the false and fraudulent representations of the treasurer, Edwards, concerning the condition of his accounts at the time as treasurer of Missoula county. Certain irregular proceedings and false reports of the board of county commissioners of said county, touching the condition of the official accounts and business of said treasurer as ascertained by them at a regular meeting of said "board" held September 7, 1875, are also alleged and set forth in the answer. Denials of certain allegations of the complaint are made, which denials constitute a good defense to the action only until such allegations are shown to be material as matters of fact, and are sustained by competent proof. Defendants deny that the bond was submitted to the board of county commissioners for approval July 12, 1875, but admit that it was so submitted September 7, 1875. Deny that the new bond was accepted, approved or acted upon by the commissioners either as a substitute or otherwise of the original bond, prior to September 7, 1875.

The complaint charges that the alleged defalcation of
Edwards, treasurer, occurred between the 12th day of
July and the 5th day of March, at which period his right
to hold and enjoy the office of treasurer terminated by
limitation of law.    It becomes an important question in
this inquiry as to the period at or near which the defalca-
tion complained of actually occurred.    This leads us to
consider the subject with reference to the interval be-
tween the 12th day of July and the 7th day of September,
1875, as the time when the unlawful conversion of the
moneys of Missoula county, mentioned in the complaint
and answer, is believed to have been made.

The indorsements on the instrument show that the
bond in suit was approved and filed, and duly recorded on
the 12th day of July, 1875.    It appears from such in-
dorsements that the approval of this bond was made by
the chairman and clerk only, without the official concur-
rence of the entire board of commissioners.

Section 87, article VI, Codified Statutes, page 451, reads
as follows: " A county treasurer shall be elected in each
county for the term of two years, and shall, before enter-
ing upon the discharge of his duties, execute to the board
of county commissioners of his county a bond, with
three or more sufficient sureties, to be approved by the
board, and in such penal sum as they may direct, which
bond, with the approval of the board indorsed thereon by
their clerk, shall be filed in the office of the county clerk;
and in case the board of commissioners shall not be in
session in time for any county treasurer to present his
bond for their approval as above specified, or he shall be
unable from any cause to present his bond at any regu-
lar meeting of the board after due notice of his election,
then it may be lawful for such treasurer to present his
bond to the chairman and clerk of such board for their
approval, and their approval indorsed thereon shall have
the same effect as if done by the board of commissioners.
And in such case, when the board shall not have fixed the

penal sum of such bond, it shall not be less than double
the amount of all the moneys directed by the board to be
levied in the county and to be paid to the treasurer
during the year."

In view of this provision of the statute, can it be seri-
ously contended that the approval of the bond under
consideration, in manner and form as shown by the
indorsements thereon, was effectual and valid, and con-
sistent with the requirements of the provisions of law
above quoted? We think not. We are clearly of the
opinion that, by no just interpretation or construction
of the statute regulating this duty, can it safely be as-
sumed that the power to approve the bond is conferred
upon the chairman of the board or its clerk. That what-
ever right or duty is imposed by law upon the board of
commissioners to accept and approve an instrument like
the one in question, for the purpose of substituting the
same in lieu of a former one executed, of the same nature
and character, that right or power is vested in the board
alone as a whole, to be exercised only by that body when
convened in regular session. This power, therefore, being
inherent in the board alone, cannot be legally delegated
to others.

A portion of defendants' answer may be considered in
this connection. We quote: "Defendants further aver
that the bond now in suit was presented to the said
board of county commissioners on the 7th day of Sep-
tember, 1875, and at that time, and prior to the accept-
ance and approval of said bond by said board of county
commissioners, the said board of county commissioners
proceeded to examine, and did examine, the books,
papers and moneys of the said W. G. Edwards, as such
county treasurer, and after such examination reported
and caused to be entered in the minutes of their proceed-
ings an order or entry to the effect that they had exam-
ined the books and accounts of said treasurer, and the
moneys reported to be in the hands of said treasurer and

belonging to said Missoula county, and that they had found the same to be correct and properly accounted for. That the defendants, believing the report of the board of county commissioners to be true, and relying upon the truth of the same, consented and permitted the bond in suit to be presented for acceptance and approval, and that the same was then and there accepted and approved as the official bond of the said W. G. Edwards as county treasurer."

If this be true, then the action of the commissioners was conclusive as to the time when the bond in question was accepted and approved by them and substituted in lieu of the original bond of said treasurer. It fixes and determines the date at which the liability of the defendants, as sureties, began.

Defendants in their answer aver, "on information and belief, that at the time of the examination of the books, papers and moneys as aforesaid, and at the time of the acceptance of and approval of the bond now in suit, the said county treasurer had appropriated and converted to his own use and benefit a large sum of county money belonging to said Missoula county, and intrusted to the care and custody of the said county treasurer. That said sum appropriated and converted to his own use by said county treasurer, W. G. Edwards, was about the sum of $1,600, and that at the time that the bond in suit was accepted and approved, said sum had not been repaid, or any part thereof, but that said treasurer was then in default to said county for said amount. Defendants further aver that they are informed and believe that at the time of the examination of the books, accounts and moneys of the said county treasurer, W. G. Edwards, as aforesaid, and at the time the same was reported to be correct by the said board of county commissioners, the said board of county commissioners knew that the report was not correct and that the said treasurer, W. G. Edwards, was a defaulter, and did not produce for examina-

tion or properly account for the sum of money belonging to Missoula county, and which his books showed should be in his hands as such county treasurer. That the said treasurer, W. G. Edwards, at that time presented to the board of county commissioners, as a portion of the county funds for which he was accountable as such treasurer, a check on the 'Missoula National Bank,' drawn in favor of the said W. G. Edwards, by one D. J. Welch. That said board of county commissioners did not examine said check as to its being genuine, or make any effort to find out if said check would be paid on presentation at said bank, but received the same and counted it as a portion of the county funds reported by said county treasurer as being in his hands as aforesaid. Defendants aver that said check was not money, or a portion of the county funds for which said county treasurer, W. G. Edwards, was responsible as such county treasurer, and that the fact was known to the said board of county commissioners at the time they made and entered their report aforesaid; and that it showed upon the face of the transaction that the said Edwards was in default to the county of Missoula for county funds unlawfully appropriated and used by him and remaining unpaid at the time the bond in suit was accepted and approved by the said board of county commissioners."

This averment sets out, as matters of defense, two material questions of fact:

1st. A previous conversion of money by the treasurer, Edwards, to his own use; and

2d. Fraud on the part of the board of county commissioners in endeavoring to cover up the same.

On the first proposition the supreme court of the United States in the case of *Farrar* v. *United States*, 5 Peters, 389, say: "We feel no difficulty in affirming that for any sums paid to Rector, prior to the execution of the bond, there is but one ground on which the sureties could be held answerable to the United States, and

that is on the assumption that he still held the money in bank or otherwise. If still in his hands, he was, up to that time, bailee to the government; but upon the contrary hypothesis he had become a debtor or defaulter to the government and his offense had already been consummated. If intended to cover past dereliction, the bond should have been made retroactive in its action. The sureties have not undertaken against his past misconduct. They ought, therefore, to have been let into proof of the actual facts so vitally important to their defense, and whether paid away in violation or in execution of the trust reposed in him; if paid away, he no longer stood in the relation of bailee. . . ."

Referring to the bond here sued on, we find the following language, to wit: "Now, therefore, the condition of the foregoing obligation is such that if the said William G. Edwards and his deputies, and all persons employed in his office, shall well and faithfully and promptly perform all of the duties pertaining to the said office of treasurer, and the said William G. Edwards and his deputies shall pay, according to law, all moneys which may come into his hands as treasurer," etc.

By this it will be seen that there was nothing in the bond retrospective in its character, and the obligations of the sureties were for the future and not for the past. In the language of the supreme court quoted above: "They ought, therefore, to have been let into proof of the actual state of facts so vitally important to their defense."

2d. As matter of defense the defendants allege in their answer fraud on the part of the board of county commissioners. They aver that, "on the 7th day of September, 1875, and prior to the acceptance by them of the bond, the board of county commissioners proceeded to examine and did examine the books, papers and moneys of the treasurer, and after such examination reported, and caused to be entered in the minutes of their proceedings, an order or entry to the effect that they had examined

the books and accounts of the treasurer, and the moneys reported to be in the hands of said treasurer, and belonging to Missoula county, and that they found the same to be correct and properly accounted for. And at the time, the said board of county commissioners knew that the treasurer was a defaulter, and did not produce for examination or properly account for the sum of money belonging to Missoula county, and which his books showed should be in his hands. That at the time he presented to the board, as a portion of the county funds, a check on the Missoula National Bank, drawn in favor of the said W. G. Edwards, by one D. J. Welch; that the board did not examine said check as to its being genuine, or make any effort to find out if said check would be paid on presentation at said bank, but received it the same and counted it as a portion of the county funds reported by the treasurer as in his hands."

Section 92, article VI, Codified Statutes, provides that: " It shall be the duty of each county treasurer to receive all moneys belonging to his county, from whatever source they may be derived, and other moneys which are by law directed to be paid to him."

" All moneys received by him for the use of the county shall be paid out by him only on the order of the board of county commissioners, according to law, except when special provision for the payment thereof is or shall be otherwise made by law."

Applying this statute to the case at bar, it was clearly the duty of the treasurer to present to the board to be counted, money or vouchers upon which money belonging to the county has been legally paid in the course of his official business or transactions. He could not lawfully hold or present as a part of the county funds, in the settlement of his accounts with the board of commissioners, a check of a third party. Such a paper or instrument is not money in the legal acceptation of the term.

The check under consideration was signed by one D. J. Welch. The record shows that "David J. Welch" was one of the sureties on the original bond of Edwards, treasurer, and who sought to be released from further liability thereon. It may reasonably be assumed that David J. Welch, the surety, is the same person who signed the check in question. This fact, taken in connection with the circumstances existing at the time — the anxiety of some of the sureties to be released from the bond — was of itself sufficient to awaken suspicion in the minds of the commissioners of irregularity in the official acts of the county treasurer. A prudent and reasonable business man, under similar circumstances, and actuated by the same doubt or suspicion, would at once have instituted inquiry into the object or purpose for which the check was drawn and received, and whether it would be honored on presentation to the payer. But we again affirm that the check in question could not be held or counted by the commissioners, in their settlement with Edwards, as a part or portion of the money in his hands as treasurer, belonging to Missoula county.

The failure of the board of commissioners to make a proper settlement with the treasurer, Edwards, set up in the answer as a defense, was well pleaded, and the defendants should have been permitted to introduce evidence to support it.

Having thus far examined this case on its merits, as shown by the pleadings, it becomes evident to us that the court below erred in sustaining the motion of the district attorney, and rendering judgment for the plaintiff on the pleadings.

But another important question is presented for our consideration, before we arrive at a final determination of this appeal. On the 7th day of June, A. D. 18—, a suit was instituted by the board of county commissioners of Missoula county against the sureties on the original bond of the treasurer, W. G. Edwards, to recover

the amount of the defalcation alleged in the present action to have occurred. The suit was brought to trial before the honorable judge then sitting, a jury having been expressly waived, in and for the second judicial district, Missoula county. The court, in its findings of fact, said: "I find that the board of county commissioners did accept the bond given by Edwards in lieu of this bond, and, as far as it was in their power, release this bond and the sureties thereon; that the substituted bond was voluntarily executed."

"As a conclusion of law I find that the said board of county commissioners could accept an official bond in lieu of one previously given, if voluntarily executed, from the treasurer of the county, as in this case, and that therefore the defendants should recover judgment for their costs."

And judgment was accordingly entered.

From this judgment the board of commissioners appealed to this court. The cause was argued by counsel and duly submitted at the August term, 1877. The court, in rendering its opinion, say: "This action was commenced by the board of commissioners of Missoula county upon the official bond of Edwards, the county treasurer. This bond was executed December 19, 1873, to the board of county commissioners, and filed and approved according to law, and Edwards entered afterwards upon the discharge of his duties as treasurer. Some of the respondents, who were sureties upon the bond, wished to be released from the same, and a new bond was executed, filed and approved July 12, 1875. A settlement took place September 7, 1875, between Edwards and the county commissioners, and the new bond was accepted as a substitute for the original instrument. The term of Edwards expired March 5, 1876, and this action has been commenced to recover $2,475, which Edwards failed to account for, and pay over to his successor. The court below rendered judgment for the respondents on the

ground that they had been released from liability by the execution and acceptance of the second bond.

"There is only one legal question for our consideration. Could the county commissioners, under the laws of the territory, accept the last bond of Edwards in lieu of the first? The county of Missoula is an organized county within this territory, and a body corporate and politic. It is empowered for certain purposes, one of which is the following: 'To make all contracts, and do all other acts in relation to the property and concerns necessary to the exercise of its corporate or administrative powers.' Codified Statutes, 433, sec. 1. The powers of the body corporate and politic must be exercised by the board of county commissioners. Codified Statutes, 434, sec. 3. 'This board is authorized to examine and settle all accounts of the receipts and expenses of the county, and to examine, settle and allow all accounts chargeable against the county,' and to 'represent the county, and have the care of the county property, and the management of the business and concerns of the county, in all cases where no other provision is made by law.' Codified Statutes, 435, sec. 14. The county treasurer is required to 'execute to the board of county commissioners of his county a bond with three or more sufficient sureties, to be approved by the board, and in such penal sum as they may direct; which bond, with the approval of the board indorsed thereon by their clerk, shall be filed in the office of the county clerk.' Codified Statutes, 451, sec. 87. It is the duty of the county treasurer to collect, receive and pay out 'all moneys belonging to his county.' Codified Statutes, 452, sec. 92. He is also the collector of taxes in his county. Codified Statutes, 453, sec. 96. There is no statute which expressly empowers the board of county commissioners to require or accept new bonds of the county treasurer.

"It will be noticed that the county commissioners fix the penalty of the bond of the county treasurer, and decide

upon the sufficiency of the sureties, and that it is executed to the board of county commissioners for the use and benefit of the county. The object of the statutes which have been referred to is the protection of the county against any loss through the failure of the county treasurer to perform faithfully his official duties. The omission of the county treasurer to pay out according to law the moneys of the county, defeats the purposes for which the county has been organized. If the county commissioners cannot obtain these moneys on account of the insolvency of the sureties or a fatal defect in the bond, the corporate or administrative powers of the county cannot be exercised. There is only one remedy for this state of things, and a new bond which is good and sufficient must be executed by the county treasurer. This is one of the cases 'where no other provision is made by law.' The execution of the new bond is 'necessary to the exercise of the corporate or administrative powers of the county.' The transcript does not disclose the reasons which controlled the action of the county commissioners in requiring Edwards to give the new bond, although it appears that some of the respondents took the first steps to bring about this result. The good faith of the county commissioners is not questioned by the respondents, and this branch of the investigation is therefore unimportant.

"Can an action be enforced upon the second bond? Have the rights of the county of Missoula been impaired by the conduct of its board of county commissioners? In *Sweetser* v. *Hay*, 2 Gray, 49, Mr. Justice Metcalf says: 'Actions have been supported on bonds which no law required, when they were executed voluntarily and with proper conditions to procure the performance of official duty.' We find the following note in Dillon on Municipal Corporations: 'A bond given by the treasurer of a county for the faithful performance of his official duties to the board of supervisors of the same county, is a good

and valid bond, notwithstanding there may be no statute requiring one.' *Supervisors* v. *Coffinbury*, 1 Mich. 355; *People* v. *John*, 22 id. 461; 1 Dillon on Municipal Corporations, sec. 155. In *United States* v. *Tingey*, 5 Pet. 115, Mr. Justice Story says: 'We hold that a voluntary bond, taken by authority of the proper officers of the treasury department, to whom the disbursements of public moneys is intrusted, to secure the fidelity in official duties of a receiver or an agent for disbursing of public moneys, is a binding contract between him and his sureties and the United States, although such bond may not be prescribed or required by any positive law. The right to take such a bond is, in our view, an incident to the duties belonging to such a department, and the United States having a political capacity to take it, we see no objection to its validity in a moral or legal view.' In the case at bar the second bond was given voluntarily to the county of Missoula to secure the faithful performance of official duties. The interests of the public have not been injured by the action of the county commissioners. We think that this action should not have been commenced upon the original bond of Edwards."

We have deemed it expedient to quote at length the foregoing opinion of Mr. Justice Blake, on the first appeal, for the purpose of reviewing it in this connection. In that opinion it is said: "The court below rendered judgment for the respondents on the ground that they had been released from liability by the execution and acceptance of the second bond. There is only one legal question for our consideration. Could the county commissioners, under the laws of the territory, accept the last bond of Edwards in lieu of the first?"

The opinion then proceeds to the examination of the question with reference to the power and authority of the board of county commissioners under the laws of the territory. There can be no doubt that when, in the judgment of a board of county commissioners, the public

interests of their county would be better protected there-by, it is within the scope of their authority to require of the treasurer additional security, or that he execute a new bond for the faithful performance of his official duties. And we reaffirm, as a legal proposition, the views of the court on this point as announced in the opinion just cited.

Again, in that opinion, the court say: "Can an action be enforced upon the second bond?" etc. With this part of the opinion and the authorities there cited we urge no objection. We concur in the views therein expressed, and accept the conclusions arrived at by the court.

In conclusion, the court say: "In the case at bar, the second bond was given voluntarily to the county of Mis-soula, to secure the faithful performance of official duties. The interests of the people have not been injured by the action of the county commissioners. We think that this action should not have been commenced upon the original bond of Edwards, and the judgment of the court below is affirmed."

This extract from the concluding part of the opinion of the court is here modified, so as to correctly state the relation which the sureties on each of the two bonds sus-tain to the defalcation or delinquency of the treasurer, Edwards, as charged in the complaint. The bond first given by the treasurer recites: "That if the said W. G. Edwards and his deputy, and all persons employed in his office, shall well and faithfully and promptly perform all of the duties pertaining to the office of treasurer, and the said Wm. G. Edwards and his deputies shall pay accord-ing to law all moneys which may come into his hands as treasurer, and will render a just and true account thereof whenever required by the said board of county commis-sioners, or by any provision of law, and shall deliver to his successor in office, or any person authorized by law to receive the same, all moneys, bonds, papers and other things appertaining to his office, then the above obliga-

tion to be null and void; otherwise, to be and remain in full force and effect."

For all the purposes mentioned, the sureties on this bond were liable to the county commissioners up to the 7th day of September, 1875, and are still liable for any breach of the conditions of the bond by their principal prior to the 7th day of September, 1875, and not afterwards, by him or them, made good to the county.

While the second or new bond recited that is given as a substitute or in lieu of the original instrument, yet the extent of the liability of the sureties thereon is expressly stated to be "for the payment, according to law, of all moneys which shall come into his (Edwards') hands as treasurer," etc. If it was intended to hold the sureties on the second bond for past delinquencies of the treasurer, it should have been so stated and expressed in the instrument itself. The law that the liability of sureties on an official bond cannot afterwards be increased or diminished by implication is so well established that no citation of authorities in support of the same is necessary.

The judgment of the district court in the former suit was against the power of the county commissioners to bring or maintain an action to recover on the original bond of the treasurer, Edwards. An appeal was taken from that judgment to this court, where the same was affirmed. Afterwards a suit was commenced by the county commissioners to recover upon the second bond the amount of the alleged defalcation of the treasurer. In this suit judgment was rendered on the pleadings in favor of the respondent for the sum claimed in the complaint. In view of the law as now laid down by this court, the judgment was erroneous.

The judgment of the court below is reversed, with costs, and the cause remanded for a new trial.

*Judgment reversed.*