#### COUNTY OF CALEDONIA.

##### AUGUST TERM, 1850.

[Continued from Volume 22, page 574.]

---

PRESENT,

Hon. STEPHEN ROYCE, CHIEF JUDGE.
Hon. ISAAC F. REDFIELD,
Hon. MILO L. BENNETT, } ASSISTANT JUDGES.
Hon. LUKE P. POLAND,

---

WILLIAM V. HUTCHINS AND EZRA HAZELTINE *v.* WALTER GIL-
CHRIST, ARCHIBALD GILCHRIST, LLOYD KIMBALL, ALEXANDER
JOHNSON AND WILLIAM R. MONTEITH.

*Sale. Change of possession. Notice to bailee.*

A. executed to the plaintiffs, his creditors, a bill of sale of certain pine logs,
which he had previously deposited upon the land of C., near the bank of Con-
necticut river, by C.'s consent, a portion of which were then so situated, as to
render it somewhat difficult to remove them ; and by the terms of the contract
the plaintiffs were to take possession of the property and make sale of it in such
manner as they deemed best, and apply the avails as therein specified. And it
was held, that, as between the parties, the bill of sale was an executed

contract, and placed the property at the disposal of the plaintiffs, and gave them not only the title, but a constructive possession, with power to reduce it to an actual possession at their own pleasure.

And it was also held, that C. did not, under such circumstances, become the bailee of A.; and that, A. not having at the time of the sale the actual possession and beneficial use of the property, but a constructive possession merely, flowing from his general right of property, this possession followed the right of property under the bill of sale to the plaintiffs, accompanied with a right of entry to take away the logs, and that the sale was therefore operative, as against the creditors of A., without any actual change, by the plaintiffs, in the local situation of the logs, or any change of the marks upon them, and without any notice to C. of the sale. POLAND, J., dissenting.

It is only when the vendor exercises some control or acts of ownership over the property, after the sale, or has some beneficial use or possession of it, or the property is so situated, as to make him the apparent owner of it, that the court will pronounce the sale a fraud *per se.*

TRESPASS for taking a quantity pine logs. Plea, the general issue, with notice of special matter of defence, and trial by jury, December Term, 1848,—POLAND, J., presiding.

On trial the plaintiffs, to prove their title to the logs in question, gave in evidence a bill of sale from Sullivan G. Hutchins to themselves, dated January 10, 1848, which was signed by each of the parties to it, and was in these words :—

" This certifies, that the undersigned Sullivan G. Hutchins has,
' for value received, sold to Wm. V. Hutchins and Ezra Hazeltine,
' undersigned, all the starch in Barnet, Vt., which said Sullivan G.
' owns, or in which he has any interest :—also, all the lumber and
' logs and timber, manufactured and unmanufactured, belonging to
' said Sullivan, or in which he has any interest, in, about and near
' the Nulhegan river, in or near the town of Brunswick, Vt., or else-
' where,—meaning all that is in or near said Nulhegan river, be-
' tween its mouth and source,—and also all the logs, lumber and tim-
' ber, of any description, manufactured or unmanufactured, which
' belongs to said Sullivan, or in which he has any interest, in the
' state of Vermont, including all that is in or near the west bank of
' Connecticut river in said state of Vermont, and elsewhere in said
' state ; and all the tools and implements, of any kind, connected
' with the business of lumbering ; and all the household furniture,
' belonging to said Sullivan in said state of Vermont ;—and said Wil-
' liam V. and Ezra are and agree to take possession and delivery of
' all said property as above, and are to sell or otherwise dispose of
' the same, as to them may seem best, and account to said Sullivan

' G. for the same on debts due from him to said William V. and ' Ezra, and where said William V. and Ezra are in any way holden ' or liable on account or by reason of said Sullivan G., by having · signed as sureties for him, or otherwise."

It was conceded, that the logs in question were part of the lumber mentioned in the bill of sale. On trial the facts in reference to the logs appeared as follows. The logs were floated down Connecticut river, and sometime in December, 1847, were taken out of the river by the workmen of S. G. Hutchins and placed upon the land of the defendant Johnson, near the bank of the river, with the consent and permission of Johnson, where they continued until after the bill of sale was executed to the plaintiffs, and until after they were attached by the defendants as the property of S. G. Hutchins. At the time of the execution of the bill of sale a portion of the logs lay upon a low piece of ground, and were intermingled with lumber of other persons, and with some ice, so as to render it in some measure difficult to remove them. The residue were upon higher ground, and could have been removed without any difficulty. All the lumber bore the mark of S. G. Hutchins. The defendant Monteith had been, previous to January 11, 1848, an agent for S. G. Hutchins in the lumber business; and early in the morning of the eleventh of January, 1848, the agent and attorney of the plaintiffs notified Monteith, as agent of S. G. Hutchins, that S. G. Hutchins had failed, and had given the above bill of sale to the plaintiffs, and demanded the lumber of him. The defendants were partners, under the firm of Gilchrist, Kimball & Co.; and about sunrise, on the morning of the eleventh of January, 1848, they attached the logs as the property of S. G. Hutchins, and subsequently caused them to be sold upon their execution against him. The plaintiffs had not taken any possession of the logs, except as above stated; and Johnson was not notified of the sale from S. G. Hutchins to the plaintiffs, previous to the attachment of the logs by the defendants.

The court instructed the jury, that the evidence in the case did not show a sufficient change of possession from S. G. Hutchins to the plaintiffs, so as to render the sale valid against the defendants, who were creditors of S. G. Hutchins.

Verdict for defendants. Exceptions by plaintiffs.

*Peck & Colby* for plaintiffs.

We do not controvert the principle, that the possession of personal property must accompany the sale; but we insist, that there are exceptions, and that the peculiar character and situation of the property in question should take the case out of the general rule.

1. The property was of a ponderous character, and a portion of it was intermingled with timber owned by other individuals, and frozen in the ice. A removal of it would have been attended with much expense and trouble, without any apparent necessity. Its nature and condition should exempt it from the general rule. *Weeks* v. *Weed*, 2 Aik 64. *Conard* v. *Atlantic Ins. Co.*, 1 Pet. 449. *Hemmenway* v. *Wheeler*, 14 Pick. 448. *Jewett* v. *Warren*, 12 Mass. 300. *Mills* v. *Camp*, 14 Conn. 219. *Randall* v. *Cook*, 17 Wend. 54. *Gibson* v. *Stevens*, 8 Howard 384. 2 Ken 500. *Evarts* v. *Butler*, Brayt. 216. *Chappel* v. *Marvin*, 2 Aik. 79. *Sanborn* v. *Kittredge et al.*, 20 Vt. 632.

2. Notice to Monteith of the sale was notice to Johnson, in whose possession the logs were, and who was partner with Monteith and defendant with him in this suit.

3. Neither a removal of the logs nor notice to Johnson was necessary. Johnson had no control or supervision of the property; his land was made a mere place of deposit. Hutchins had the right to enter at any time and remove the timber, and the execution and delivery of the bill of sale conferred upon the plaintiffs the same right. It was a transfer of possession, as well as of title. *Tansley* v. *Turner*, 2 Bing. N. C. 151, [29 E. C. L. 288.]

4. The plaintiffs, under the circumstances of the case, were entitled to a reasonable time to remove the property, if a removal were necessary. *Ingraham* v. *Wheeler*, 6 Conn. 277.

*A. Underwood* for defendants.

There is no reason for making this an exception to the general rule. The property being in the possession of a third person, the purchaser may as well take possession of it by giving notice to such person, as if it were a cow, or a watch. There is the same reason for holding the property liable to attachment; it gives the same false credit; the attaching creditor cannot, by inquiry, find out the real owner, without such notice. There was no change of *marks*.

There was no symbolical or part delivery, as in *Chappel* v. *Marvin*, 2 Aik. 79. *Fletcher* v. *Howard*, Ib. 115. It does not appear, that the plaintiffs were shown the property, or that they agreed to receive it where it lay, as in *Evarts* v. *Butler*, Brayt. 216. See, also, *Carpenter* v. *Dole*, 13 Vt. 580; *Shindler* v. *Houston*, 1 Denio 48; 9 Law Rep. 185; Long on Sales 159; *Stoveld* v. *Hughes*, 14 East 308. In the case of *Sanborn* v. *Kittredge et al.*, 20 Vt. 639, the logs were not in the possession of a third person, in reality, but on the ice and the land of strangers. The case of *Merritt* v. *Miller*, 13 Vt. 416, establishes the doctrine contended for by the defendants.

The opinion of the court was delivered by

BENNETT, J. This is a contest between the creditors of Sullivan G. Hutchins. The plaintiffs claim title to the logs in question under a bill of sale, executed the tenth of January, 1848, and the defendants under an attachment made the next morning, and a subsequent sale on execution. No question was raised in the court below in regard to the *bona fide* character of the bill of sale.

The court, as matter of law, directed a verdict for the defendants, for the want of a sufficient change in the possession of the logs. The logs in question are found to be a part of those specified in the bill of sale. They had been run down the Connecticut river, and in December, 1847, Hutchins had caused them to be taken out and piled on the adjoining land of Johnson, one of the defendants in this suit, where they remained up to the time of the bill of sale and the attachment. This was done by the consent and permission of Johnson. We think, it is clear, that the bill of sale was an *executed* contract, as between the parties, and placed the property at the disposal of the plaintiffs, and gave them not only the title, but a *constructive* possession, with power to reduce it to an *actual* possession, at their own pleasure. There was nothing farther to be done, to ascertain the quantity, quality, or value, of the property; and the contract of sale implies an agreement, that the plaintiffs were to receive the logs in question, where they then lay. By the very terms of the bill of sale, the plaintiffs were to take possession of the property, and make sale, in such manner as to them might seem best, and apply the avails as therein specified. As against Johnson, Hutchins had the right to enter upon his lands, to take away the logs. This results from the

fact, that they were piled there by his consent. This right passed, under the bill of sale, from Hutchins to the plaintiffs. The logs were then under the immediate power and control of the plaintiffs; and this is of the very essence of a *constructive delivery*. *Shindler* v. *Houston,* 1 Denio 48.

But the question is, shall the plaintiff's title prevail over the subsequent attachment? It is claimed, that the bill of sale is a *fraud per se,* for the want of a change in the possession, as to the creditors of Hutchins; and this was the view of the court below.

We do not intend to impugn the general doctrine, that has been so long established in this state, that possession must accompany and follow the sale of personal property, to render it operative against the creditors of the vendor. It was well said by COLLAMER, J., in *Pierce* v. *Chipman,* 8 Vt. 337, that the *actual possession* and *beneficial use* of the property by the vendor, after sale, is inconsistent with the sale, and *conclusive* evidence against it, so far as relates to creditors; and it is said by PRENTISS, J., in *Barnes* v. *Brown,* 2 Vt. 377, that in all the cases, where sales, not fraudulent in fact, have been adjudged void as against creditors, the vendor continued *in the use,* or *possession, of the property,* and the *apparent* ownership remained with him. So far, the reason of the rule requires us to go, and no farther. What will constitute a sufficient change in the possession must be a question, which will vary with circumstances; and what may have been said by judges on this subject should be taken with reference to the case then before them, in relation to the character and situation of the property at the time of the sale.

The logs in question were on the land of Johnson; but he was not the depositary of them, or the bailee of Hutchins; and he assumed no liability in relation to the logs. His land was simply made the place of deposit, by his consent; and the logs at all times remained at the risk and subject to the control of Hutchins, with a right of entry to take them away. The logs, then, at the time of the sale, were not in the actual possession and beneficial use of Hutchins, or of his bailee; but he had a *constructive* possession simply, flowing from his general right of property; and this possession followed the right of property under the bill of sale to the plaintiffs,

accompanied with a right of entry to take away the logs. The land of Johnson, in effect, became the warehouse of the purchasers; and after Hutchins had executed the bill of sale, the logs cannot be considered as remaining even in his constructive possession. *Tansley* v. *Turner et al.,* 29 E. C. L. 288. Much less had he any beneficial use and possession of the property, inconsistent with the bill of sale.

In *Gibson* v. *Stevens,* 8 Howard 384, it was held, that where personal property, from its character and situation at the time of the sale, is incapable of an actual delivery, a delivery of a bill of sale, or other evidence of title, was sufficient to transfer the property and the *possession* to the vendee, so as to conclude a creditor of the vendor from attaching it. The property, in that case, was articles of commerce, purchased in Indiana, and was lying at the time in the vendor's warehouse, in that state. In the case of *Mills* v. *Camp et al.,* 14 Conn. 219, a quantity of iron ore, lying upon the land of the debtor, was attached but not removed; and it was held, that the attachment was valid against the other creditors of the debtor, without a removal. The courts in that state have adopted the same general rule of law, founded, as they say, upon principles of evidence and policy, that, to render an attachment *effective* against subsequent attaching creditors, there must be a substantial change of possession and removal of the property, as in this state; yet they treated that case as an exception to the general rule, upon the ground, that the ore could not be removed without very considerable expense and waste. So in *Hemmenway* v. *Wheeler,* 14 Pick. 408, it was held, that where hewn stone were attached, lying on land belonging to the commonwealth, a removal was not necessary. The court considered, that the officer remained in the *constructive* possession of the stone, saying, " that the nature of the possession and custody, which an officer is bound to take and keep, will depend upon the nature and position of the property attached." The officer had the same possession, after the attachment, that the debtor had before.

The case of *Sanborn* v. *Kittredge et al.,* 20 Vt. 639, is in point. The logs, at the time of the sale, were in part on the ice in a certain river, and a part upon the lands of third persons; and the court held, that the vendee's title was perfect to the logs, against the creditors of the vendor, without any removal. In that case, the vendor had

but a constructive possession, and this passed to the vendee. Though, the attaching creditor had notice of the sale, yet I do not deem that important. If the sale were otherwise a *fraud* in law, it was but a notice of a sale *void* as to him, and it could not have the effect to make it good. It has often been decided in this state, that notice of a sale *per se fraudulent* cannot change its character.

But in this bill of exceptions it appears, that Monteith, one of the defendants, had notice of the bill of sale early on the morning of the 11th, from the plaintiffs, and that the property was demanded of him, as being the agent of Hutchins. But whether the notice was before the attachment, or after, does not distinctly appear,—nor is it material in the view we have taken.

The logs were necessarily of a ponderous character, and a portion of them so frozen in the ice as to render it in some measure difficult to remove them. We think, then, it was not necessary, to render the bill of sale valid against the creditors of Hutchins, that there should have been a change in the *local situation* of the logs. There may be a change in the possession, while the site of the property remains the same. In this case the plaintiffs succeeded to just such a possession, as Hutchins had before and at the time of the bill of sale; and after the bill of sale Hutchins exercised no control or acts of ownership over the logs, and had no beneficial use or possession of them; nor was there any thing in the situation of the property, to make Hutchins the *apparent* owner of the logs still. Being upon the land of Johnson, *prima facie* they were his property and in his possession. How, then, can it be said, that in this case, possession did not accompany and follow the sale, or that there remained in Hutchins any actual possession or use of the property, after the sale, *incompatible* with it? And if not, I know of no rule of law, that will warrant the court to pronounce the sale a *fraud per se.*

Considering, then, the character and the situation of the logs, in connection with the whole facts in the case, we think no farther change in the possession was required, to render the sale operative against the creditors of Hutchins, than what the case shows.

With this view, it is unnecessary to inquire, whether, if the plaintiffs had been bound to take the actual delivery and possession of the

XXIII.    12

logs, they should be allowed a reasonable time in which to do it, before there should arise a right in the creditors of Hutchins to attach them.

The result is, a majority of the court concur in reversing the judgment of the county court.

POLAND, J. dissenting.