DOVER LUMBER CO., RESPONDENT, *v.* WHITCOMB ET AL., APPELLANTS.

(No. 3,816.)

(Submitted October 8, 1917. Decided October 23, 1917.)

[168 Pac. 947.]

*Claim and Delivery—Statute of Frauds—Sales—Constructive Delivery—Logs and Logging—Passing of Title—Appeal and Error—Presumptions—Foreign Corporations—"Doing Business."*

Sales—Statute of Frauds—Change of Possession.
    1.   The statute of frauds (Rev. Codes, sec. 6128) requiring the surrender of control by the vendor and assumption of possession by the vendee of personal property which is the subject of a sale is satisfied whenever there has been such actual change of dominion over the thing sold as is practically consistent with its nature, extent and intended use, viewed in the light of the character of the transaction and the situation of the parties at the time.
    [As to symbolical or constructive delivery of goods within statute of frauds, see note in Ann. Cas. 1917B, 566.]

Same—Delivery—Evidence of Change of Possession.
    2.   The delivery of a thing sold may be symbolical as well as actual, and the identification of the property in the hands of the new owner, by the means usually employed for such purpose, is generally sufficient evidence of a change of possession.

Appeal and Error—Presumptions—Duty of Appellant.
    3.   In entering upon the consideration of an appeal, the supreme court indulges the presumption that the conclusion reached by the trial court is justified, the burden of showing that under no view of the facts disclosed will they support the judgment appealed from being on appellant.

Logs and Logging—Constructive Delivery—Passing of Title.
    4.   In an action in claim and delivery by the purchaser of sawlogs against an attaching creditor of the seller of the logs, where the contract of sale provided, among other things, that the logs should be bark-marked as well as end-marked with the purchaser's mark, and thereafter scaled by its agent, part payment to be made for logs at a certain creek landing, "balance to be paid when logs are delivered in

On effect of contract with respect to standing timber to pass title to the same, see notes in 6 L. R. A. (n. s.) 469; 47 L. R. A. (n. s.) 870.

On validity of contract made by foreign corporations which have not complied with statutory conditions of the right to do business in the state, see note in 24 L. R. A. 315.

As to when a foreign corporation which has entered into a contract for the local handling of its product will be considered as doing business within the state, within the meaning of a statute prescribing the conditions upon which foreign corporations may transact business therein, see note in L. R. A. 1916F, 334.

the Clark's Fork River," provided that "if logs are not delivered in 1913, $1.00 per M. shall be deducted from contract price," *held* that title to the logs passed to the buyer when it and the seller intended that it should pass, to-wit, when the logs were marked, sealed and removed to the creek landing, and not when they were delivered in the Clark's Fork River, payment of the last installment of the purchase price not being essential to the passing of title.

Sales—Passing of Title—Rule.

5. The rule that title to personal property does not pass to the buyer if anything remains to be done by the seller refers to something necessary to determine the quantity, quality or identity of the thing sold, or to something necessary to put the article in the condition contemplated by the contract of sale.

Foreign Corporations—"Doing Business"—Definition.

6. Making a single contract or purchase does not constitute "doing business," within the meaning of sections 4413 and 4415, Revised Codes, which provide that contracts made by foreign corporations without having first, before doing business within this state, filed its articles of incorporation, *etc.*, in certain offices, shall be unenforceable.

MR. CHIEF JUSTICE BRANTLY Dissenting.

*Appeal from District Court, Sanders County; Theo Lentz, Judge.*

ACTION by the Dover Lumber Company against John W. Whitcomb and others. Judgment for plaintiff and Whitcomb Bros., appeal. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. Frank A. Roberts,* for Appellants.

Plaintiff, to be entitled to judgment, must establish by a preponderance of the evidence: 1. That at the time the suit was instituted, it was the absolute owner (for no qualified ownership by lien or otherwise is claimed in the complaint) and lawfully entitled to the immediate and exclusive possession of the property in controversy in this suit. 2. That the property was wrongfully detained by the defendants. The facts as admitted fall far short of showing the absolute ownership of the logs to have been in the plaintiff at the time this action was instituted. At best they simply show that plaintiff had an executory contract to purchase them (see 35 Cyc. 274–276, 282), and had paid a portion of the purchase price to the owner of the logs; that the logs, as was clearly contemplated by the plain provisions.

of the contract, remained at all times in the possession of the owner, and he was to deliver them into the Clark's Fork River, and after such delivery would thereupon be entitled to the balance due on the contract price.

Plaintiff in claim and delivery has the burden of establishing every material fact. (*Finch* v. *Kent*, 24 Mont. 268, 272, 61 Pac. 653; *Gallick* v. *Bordeau*, 31 Mont. 328, 337, 78 Pac. 583; *Cameron* v. *Wentworth*, 23 Mont. 70, 78, 57 Pac. 648; *Hickey* v. *Breen*, 40 Mont. 368, 20 Ann. Cas. 429, 106 Pac. 881.) This evidence establishes nothing more than: (1) An executory agreement to sell and deliver logs into the Clark's Fork River. (2) Payment by the lumber company on account of such agreement. That is, the evidence does not in any way unequivocally establish a sale consummated by the delivery of the logs to the lumber company; much less does it show the continued change of possession required by the statute. (*Evans* v. *Harris*, 19 Barb. (N. Y.) 416.)

Title to property covered by an executory agreement does not pass at the execution thereof, and the property covered thereby remains the property of the seller until the contract is executed. (35 Cyc. 274; *Adlam* v. *McKnight*, 32 Mont. 349, 353, 80 Pac. 613; *Hallidie* v. *Sutter St. R. Co.*, 63 Cal. 575; *Fleming* v. *State*, 106 Ga. 359, 32 S. E. 338; *Buskirk Bros.* v. *Peck*, 57 W. Va. 360, 50 S. E. 432; *Hatch* v. *Standard Oil Co.*, 100 U. S. 124, 25 L. Ed. 554; *Halterline* v. *Rice*, 62 Barb. (N. Y.) 593; *O'Keefe* v. *Kellogg*, 15 Ill. 347; *Gross* v. *Ajello*, 132 App. Div. 25, 116 N. Y. Supp. 380.)

As between the parties to a contract for the sale of personal property, the question as to when title passes is one of intention of the parties as shown by their agreement, and if the intention is manifested clearly and unequivocally in the contract itself, it controls; but there is a presumption at law that if something remains to be done for the purpose of testing the property or of fixing the amount to be paid, or of putting the property into condition for final delivery, or if final delivery has not been made to the purchaser, the title to the prop-

erty does not pass or vest in the purchaser until the act in question is done. In the contract between Derr and the plaintiff there is no manifest intention that the title in the logs should pass before delivery was made in the Clark's Fork River. (*Andrews* v. *Durant,* 11 N. Y. 35, 62 Am. Dec. 55; *Edwards* v. *Elliott,* 36 N. J. L. 449, 13 Am. Rep. 463; *West Jersey R. Co.* v. *Trenton Car Works Co.,* 32 N. J. L. 517; *Mucklow* v. *Mangles,* 1 Taunt. 318, 9 Rev. Rep. 784, 127 Eng. Reprint, 856; *In re Alaska Fishing & Dev. Co.,* 167 Fed. 875; *Rothwell* v. *Luken,* 60 Ill. App. 150.)

The foregoing rule, applicable to the parties to the contract, however, has no application to third party creditors, and good faith in the transaction as between the parties and the payment or nonpayment of the purchase price does not in any way take the case out of the statute. (*Taylor* v. *Malta Merc. Co.,* 47 Mont. 342, 346, 132 Pac. 549; *Morris* v. *McLaughlin,* 25 Mont. 151, 64 Pac. 219; *Vance* v. *Boynton,* 8 Cal. 554; *Woods* v. *Bugbey,* 29 Cal. 466; *Felt* v. *Cleghorn,* 2 Colo. App. 4, 29 Pac. 813; *Burchinell* v. *Weinberger,* 4 Colo. App. 6, 34 Pac. 911; *Helgert* v. *Stewart,* 20 Colo. App. 202, 77 Pac. 1091.) "A sale of personal chattels, unaccompanied by possession, is fraudulent in law as to creditors of the vendor. This is a question for the court, and not for the jury." (*Dewart* v. *Clement,* 48 Pa. St. 413.) The change of possession must be such as will give evidence to the world of the claim of the new owners. (*McKee Stair Building Co.* v. *Martin,* 126 Cal. 557, 58 Pac. 1044.)

*Mr. Harry H. Parsons* and *Mr. A. S. Ainsworth,* for Respondent.

There is nothing that reflects upon the good faith of the parties to the sale; therefore the question of fraud may be eliminated. (*Morris* v. *McLaughlin,* 25 Mont. 151, 64 Pac. 219; *Taylor* v. *Malta Merc. Co.,* 47 Mont. 342, 132 Pac. 549.) The questions of law to be determined under section 6128 of the statute in this case are these: (1) Was there an immediate delivery of the logs made by Derr to the plaintiff? and (2) If

there was such a delivery, was it followed by an actual and
continued change of possession? In this state, and by the great
weight of authority, a symbolical delivery is equivalent to an
actual delivery. (*Western Supply Co.* v. *Quinn,* 40 Mont. 156,
135 Am. St. Rep. 612, 20 Ann. Cas. 173, 28 L. R. A. (n. s.) 214,
105 Pac. 732; *Taylor* v. *Malta Merc. Co.,* 47 Mont. 342, 132 Pac.
549.)

The first question that presents itself is: Was there a de-
livery of the logs to the plaintiff, actual or constructive? The
rule for determining what constitutes a delivery is laid down
in *Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707, and *Cady* v. *Zim-
merman,* 20 Mont. 225, 50 Pac. 553. In the case of *Barker* v.
*Livingston County Nat. Bank,* 30 Ill. App. 591, it is held that
the posting of notices on cribs of corn is a sufficient delivery
as against creditors of the vendor. (*Hawkins* v. *Kansas City
Hydraulic Press Brick Co.,* 63 Mo. App. 64.) *Jewett* v. *Warren,*
12 Mass. 300, 7 Am. Dec. 74, a case similar to the one at bar, was
disposed of in favor of the vendee.

Another interesting case along the same line is that of *Mc-
Elwee* v. *Metropolitan Lumber Co.,* 69 Fed. 302, 16 C. C. A.
232. In *Dubois* v. *Spinks,* 114 Cal. 289, 46 Pac. 95, it was held
that a quantity of cordwood had passed into the possession of
the transferee, although the wood had not been moved from
the place where it had been piled. (See, also, *Williamson* v.
*Richardson,* 205 Fed. 245, 123 C. C. A. 427; *Northern Merc.
Co.* v. *Schultz,* 56 Wash. 393, 104 Pac. 850; *Hagins* v. *Combs,*
102 Ky. 165, 43 S. W. 222.)

Coming now to the second phase of the case, and that is
whether or not if there was a delivery it was followed by actual
and continued change of possession, if there was a delivery in
law, it follows as a matter of course that there was a change
of possession. The logs were delivered at Blue Creek as they
were cut; the marking of them with the end-mark "F" and
the scaler, being the last one in possession, indicated the ac-
ceptance of them. This, of course, in law, constituted a change
of possession. The change of possession was immediate upon

the marking of the logs, and it was continued since the inception of that possession was never altered or changed after the delivery or acceptance by the plaintiff in this case. (*Dodge* v. *Jones*, above.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In October, 1912, John Derr contracted to sell to the Dover Lumber Company not less than 400,000 feet of sawlogs to be cut from standing timber then owned by him. The logs were to be measured or scaled by a scaler to be employed by the company, but who was to be boarded at Derr's expense. The contract specifies the several lengths into which the logs were to be cut, the percentage of white and yellow pine, respectively, the quality of logs, and the price. The following portions of the contract are material here:

"Time of payment and manner of doing so as follows: $3.00 per M feet on skids $4.00 per M in Blue Creek; balance to be paid when logs are driven and delivered in the Clark's Fork River; logs scaled during the month to be paid on the 15th day of the month following scaling and delivering; balance or —pct. to be held back by the party of the second part from party of the first part until full and complete settlement is made for all labor and team work done on logs, and satisfactory proof that same has been done. * * * All logs shall be bark-marked 'F' and have the end marked as designated by party of the second part. The logs must be bark-marked and end-marked before they are scaled. Life of foregoing agreement to continue up to and including driving season of 1913. * * * If logs are not delivered in 1913, $1.00 per M feet shall be deducted from contract price."

In January, 1914, more than 400,000 feet of these logs were at Blue Creek Landing and in Blue Creek, upon which the Dover Lumber Company had paid to Derr $7 per 1,000 feet, or a total of $3,033.80. Whitcomb Bros., creditors of Derr, then attached the logs as the property of Derr, secured a judg-

ment against him, caused the logs to be sold, and bid them in at the sheriff's sale. This action in claim and delivery was commenced by the Dover Lumber Company asserting its ownership of, and right of possession to, the logs from January 4, 1913. The answer of Whitcomb Bros., denies ownership or right of possession in plaintiff, and alleges that plaintiff is a foreign corporation not authorized to transact business in this state. There was a reply by plaintiff, and the parties then undertook to submit the controversy for adjudication upon an agreed statement of facts which includes the purchase contract entered into between Derr and the plaintiff. The only material facts in the agreed statement, in addition to those already recited, are:

"5. The logs were bark-marked by said Derr as they were cut in the woods.

"6. The logs were scaled on the skids in the woods monthly, as provided for in the agreement.

"7. The logs were end-marked with an 'X' by John Derr, as designated by the plaintiff, on the rollways at Blue Creek Landing, on the bank of the Blue Creek, which landing was from a mile to a mile and a half from the place where said logs were cut from the trees.  *  *  *

"13. None of the logs here in question had ever been released from said Blue Creek or Blue Creek Landing, nor driven or floated into, nor otherwise delivered into, the Clark's Fork River."

. The parties also included as a part of the agreed statement the following:

"12. No person, other than Derr, was ever in actual possession of the logs prior to the sale under execution, except under the said writ of attachment and execution, unless the said act of scaling hereinabove referred to constituted such actual possession."

The trial court found for plaintiff and defendants appealed.

Section 6128, Revised Codes, provides: "Every transfer of personal property  *  *  *  is conclusively presumed, if made [1] by a person having at the time the possession or control

of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession.'' The meaning of this statute is not in doubt nor the wisdom of its enactment in question. To apply the rule to the sale of a bushel of grain, a dozen bricks, or single piece of lumber presents no obstacle whatever; but when the subject matter of the sale is a carload of grain, a kiln of bricks, or a half million feet of sawlogs, its practical application is not free from difficulty. The statute does not assume to demand the performance of that which is impossible or highly impracticable; neither was it designed to impose such onerous burdens on business as to effectually prevent legitimate transactions. The purpose of the statute is the prevention of frauds. It requires the surrender of control by the vendor and the assumption of possession by the vendee. Mere words are not sufficient to constitute the delivery contemplated, but, on the other hand, the law is satisfied whenever there has been such actual change of dominion over the thing sold as is practically consistent with its nature, extent and intended use, viewed in the light of the character of the transaction and the situation of the parties at [2] the time. Actual delivery, as the term is familiarly understood, is not indispensable. The transfer of possession of heavy, bulky or cumbersome articles, not capable of manual delivery, may nevertheless be effected. The delivery may be symbolical as well as actual, and the identification of the property in the hands of the new owner by the means usually employed for such purpose is generally held sufficient evidence of a change of possession. The delivery of the key to a warehouse was held to constitute a delivery of the heavy machinery in the building. (*Western Mining Supply Co.* v. *Quinn,* 40 Mont. 156, 135 Am. St. Rep. 612, 20 Ann. Cas. 173, 28 L. R. A. (n. s.) 214, 105 Pac. 732.) Gathering range stock into a corral and placing the purchaser's distinctive brand upon the same held sufficient evidence of a delivery and change of possession to satisfy the

statute. (*Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707; *Cady* v. *Zimmerman,* 20 Mont. 225, 50 Pac. 553.)

The contract between Derr and the lumber company required the logs to be bark-marked and end-marked with the purchaser's mark or brand before they were scaled, and to be scaled by an agent of the lumber company. The agreed statement recites that the logs were bark-marked and end-marked, and that they were scaled in the woods, *as provided for in the agreement.* There is such a paucity of facts in the agreed statement—such an absence of material facts which it is perfectly apparent could have been supplied—that this case is unnecessarily given the appearance of presenting a very close question, *viz.:* Was there such a delivery and change of possession as will satisfy the requirements of section 6128, above? We are not informed when the logs in controversy were cut and banked. More than a year elapsed between the date of the contract and levy of the writ of attachment, and in the meantime the life of the contract expired by its own terms. We are left to make application of the rule of the statute to the very meager facts presented by the record and such inferences as may be drawn from them.

The trial court found for the plaintiff, and we indulge the [3] presumption *in limine* that the conclusion reached is justified. The appellants must assume the burden of showing that under no view of the facts disclosed will they support the judgment. As between Derr and the lumber company, title to the [4] logs passed whenever they intended it should pass (35 Cyc. 277), and we entertain no doubt it did pass when the logs were marked, scaled and removed to Blue Creek. (*Bethel Steam Mill Co.* v. *Brown,* 57 Me. 9, 99 Am. Dec. 752; *Northern Merc. Co.* v. *Schultz,* 56 Wash. 393, 105 Pac. 850; *Hagins* v. *Combs,* 102 Ky. 165, 43 S. W. 222.)

It is the theory of appellants that Derr was required to deliver the logs in Clark's Fork River, and that title did not pass to the lumber company because such delivery was not made. This contention ignores a salient provision of the contract. That

driving the logs to Clark's Fork River was not a condition precedent to passing title is a demonstrable fact from the concluding paragraph of the contract itself. Assuming that in the first instance it was contemplated that Derr should perform that task, his failure to do so did not affect the sale or relieve the lumber company from paying for the logs. It merely affected the amount of compensation due to Derr, and the fact that the lumber company was bound to pay, though at a reduced price, is sufficient evidence that title passed whether the logs ever reached Clark's Fork River or not.

It is apparent from the contract, considered in its entirety, that if Derr was required to move the logs to Clark's Fork River, that task was to be performed by him as the agent or employee of the plaintiff, and that his failure in this regard had the effect only of reducing the price of the logs $1 per 1,000 feet.

The expression in the authorities to the effect that, if any[5] thing remains to be done by the seller, title does not pass, refers to something necessary to determine the quantity, quality or identity of the thing sold or to something necessary to put the article in the condition contemplated by the contract. (*Terry* v. *Wheeler*, 25 N. Y. 520.) Payment of the last installment of the purchase price was not necessary to pass title, but upon the failure of Derr to move the logs to Clark's Fork River that installment, reduced in amount as provided for in the agreement, became due at the conclusion of the driving season of 1913.

It is not material whether Derr and the lumber company observed throughout the precise order mentioned in their contract for marking, scaling and moving the logs. The facts are made to appear that the logs were identified by the purchaser's mark or brand, were removed from the place where they were cut to Blue Creek, were turned over to the lumber company to be scaled, to the end that the exact quantity for which payment should be made might be determined, the major portion of the purchase price was paid accordingly, and in this situation the life of the contract expired. Just what more could have been

done to evidence a change of possession is not suggested. Of course, the purchaser might have placed its agent in charge of the logs to keep constant watch over them, but this was not required. (*Jewett* v. *Warren,* 12 Mass. 300, 7 Am. Dec. 74.) If, as assumed by appellants, the contract contemplated in the first instance that Derr should drive the logs to Clark's Fork River, this would not be a deciding factor. (*Terry* v. *Wheeler,* above.) It is apparent from the most casual reading of the contract that the parties to it employed the term "deliver" in a very loose and unconventional sense and without regard to its legal signification. When the logs were removed to Blue Creek, branded and scaled as required by the contract, there was not anything further to be done to determine their identity, their quantity, or their purchase price. The place where they were deposited became, in a sense, the warehouse of the purchaser. The logs were then under its immediate power and control, and this is of the very essence of a constructive delivery. (*Hutchins* v. *Gilchrist,* 23 Vt. 82.) If Derr was bound in the first instance to drive the logs to Clark's Fork River, his failure to do so during the season of 1913 did not operate to extend the life of the contract or the time within which he might perform that act. It merely subjected him to the penalty of losing $1 per 1,000 feet from the original purchase price. By its own terms the contract expired with the logging season of 1913, so far, at least, as it required anything to be done by Derr.

Possession of the logs in the hands of the scaler, who was the agent of the lumber company, carried with it the *prima facie* presumption of ownership in the company (Rev. Codes, sec. 7962, subds. 8 and 11), and in the absence of any evidence to the contrary the fair presumption obtains that such possession continued to the date of the seizure under the writ of attachment (Rev. Codes, sec. 7962, subd. 32).

Paragraph 12 of the agreed statement is not a statement of fact, but a statement of mixed law and fact. Having recited the several acts done by the parties, it was a question of law whether those acts constituted possession in the purchaser.

The statute does not speak of actual possession, but of actual change of possession. Legal possession may be either actual or constructive.

Upon facts very similar to those disclosed by this record, it was held in each of the following cases that there was such delivery and change of possession as to meet the requirements of the rule of our statute: *Sanborn* v. *Kittredge,* 20 Vt 632, 50 Am. Dec. 58; *Hutchins* v. *Gilchrist,* above; *Birge* v. *Edgerton,* 28 Vt. 291; *Kingsley* v. *White,* 57 Vt. 565; *Bethel Steam Mill Co.* v. *Brown,* above; *Hagins* v. *Combs,* above; *Williamson* v. *Richardson,* 205 Fed. 245, 123 C. C. A. 427; *Dubois* v. *Spinks,* 114 Cal. 289, 46 Pac. 95.

2. Making a single contract or purchase does not constitute [6] doing business in this state within the meaning of sections 4413 and 4415, Revised Codes. (*Uihlein* v. *Caplice Com. Co.,* 39 Mont. 327, 102 Pac. 564; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727, 28 L. Ed. 1137, 5 Sup. Ct. Rep. 739.) Furthermore, this is not an action to enforce a contract.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE SANNER concurs.

MR. CHIEF JUSTICE BRANTLY dissents.

Rehearing denied November 26, 1917.