TAYLOR, APPELLANT, v. MALTA MERCANTILE CO., RESPONDENT.

(No. 3,253.)

(Submitted April 17, 1913.    Decided May 12, 1913.)

[132 Pac. 549.]

*Claim and Delivery—Fraudulent Conveyances—Constructive Fraud—Good Faith—Consideration—Evidence—Immateriality—Immediate Delivery—Actual and Continued Change of Possession—Insufficiency of Proof.*

Appeal and Error—Evidence—Offer of Proof.
    1.   Where an offer of proof was not made and the probable answer of the witness was not apparent, alleged error in sustaining an objection to a question is not reviewable.
Same—Evidence—Exclusion—Curing Error.
    2.   Error in the exclusion of offered testimony is cured by the subsequent admission of substantially the same evidence.
Fraudulent Conveyances—Constructive Fraud—Good Faith—Evidence—Immateriality.
    3.   In an action in claim and delivery based upon constructive fraud in a sale of personal property under section 6128, Revised Codes, testimony offered by the buyer that the bill of sale evidencing the transaction had been filed with the county clerk, and that he had made application for insurance on the property in his own name, was properly refused, since such evidence could only reflect upon the good faith of the parties to the sale,—a matter immaterial in an action in which fraud in law is relied upon.
Same—Consideration—Evidence—Irrelevancy.
    4.   In an action of the character mentioned in paragraph 3 above, evidence of the consideration paid for the property in question was irrelevant.

Same—Immediate Delivery—Actual and Continued Change of Possession
—Evidence—Insufficiency.
    5.   Evidence *held* insufficient to prove such an immediate delivery,
    either manual or symbolical, of property consisting of sheep-shearing
    machinery, frame buildings, *etc.*, or an actual and continued change
    of possession as to meet the requirements of section 6128, Revised
    Codes, under which transfers of personal property are conclusively
    presumed to be fraudulent and void as against the creditors of the
    seller unless accompanied "by an immediate delivery, and followed
    by an actual and continued change of possession of the things trans-
    ferred."

*Appeal from District Court, Valley County; F. N. Utter, Judge.*

CLAIM and delivery by W. H. Taylor against the Malta Mer-
cantile Company. Judgment for defendant, and plaintiff ap-
peals. Affirmed.

*Mr. T. E. Crutcher,* and *Mr. C. H. Stevens,* for Appellant,
submitted a brief; *Mr. Crutcher* argued the cause orally.

The question for this court to determine is whether there is
any testimony tending to show delivery or change of possession.
The property as shown by the bill of sale consisted of houses
and machinery. Where goods sold or mortgaged are incapable
of actual manual delivery, a symbolic delivery is sufficient to
transfer possession. (*Springer* v. *Lipsis,* 110 Ill. App. 109.)
The transfer might be sufficient where the property is bulky,
when it would not be sufficient when the property is small and
susceptible to actual, manual delivery. (*Hoffman* v. *Owens,* 31
Nev. 481, Ann. Cas. 1912A, 603, 104 Pac. 241.)  The statute of
frauds is practically the same in all the states.  Ours (section
6128) has been construed more than once by this court.  No
particular act or formal ceremony is necessary to make a deliv-
ery in law.  Any act done coupled with the intent to change the
ownership, which has the effect to transfer the dominion over
the thing sold to the buyer, is a delivery. (*Dodge* v. *Jones,* 7
Mont. 121, 14 Pac. 707.)  This is the leading case in our state,
and we think the case at bar is on all-fours with it.  The ruling
in the case of *Dodge* v. *Jones, supra,* was approved in *Cady* v.
*Zimmerman,* 20 Mont. 225, 50 Pac. 553.  In the latter case the
court, quoting approving from *Porter* v. *Bucher,* 98 Cal. 454,

33 Pac. 335, say: "In the determination of the question, as to the kind of possession necessary to be given, in order to make a sale of personal property valid as against creditors, regard must be had not only to the character of the property, but also to the nature of the transaction, the position of the parties and the intended use of the property. The law only requires that which could naturally be done in an honest business-like transaction, where there was no thought of fraud or conceal-ment." It has been held by this court that the delivery of the keys of a warehouse, in which heavy machinery has been stored, is a delivery of the machinery. (*Western Min. Supply Co.* v. *Quinn,* 40 Mont: 156, 135 Am. St. Rep. 612, 20 Ann. Cas. 173, 105 Pac. 732.) Surrender of the control of a pasture in which were horses alleged to have been sold, held a sufficient transfer of possession of the horses. (*Leader* v. *Farmers' L. & T. Co.,* 144 Iowa, 180, 122 N. W. 833.) The delivery of large and heavy machinery, if the parties act in good faith and the vendor surrenders to the vendee their actual possession and control, does not require that they be moved or changed in place. (*Ott* v. *Sutcliffe* (N. J. Eq.), 60 Atl. 965.) Whether or not the facts shown constituted a change of possession was a question for the jury. (*Rapple* v. *Hughes,* 10 Idaho, 338, 77 Pac. 722; *Simons* v. *Daly,* 9 Idaho, 87, 72 Pac. 507.) The undisputed facts in this case show (1) an absolute sale; (2) surrender of dominion over the property by the vendor and assumption of dominion by the vendee; (3) an attempt to give publicity to the sale by filing the bill of sale for record; and (4) a symbol-ical delivery of the property by delivery of the keys to the vendee. All tend to prove an absolute sale and a delivery of possession.

*Messrs. Hurd & Lewis,* for Respondent, submitted a brief; *Mr. Edwin L. Norris,* of counsel, argued the cause orally.

Citing, on the point that there was not any immediate deliv-ery or actual change of possession of the property involved: *Wilson* v. *Hill,* 17 Nev. 401, 30 Pac. 1076; *Merrill* v. *Hurlburt,* 63 Cal. 494; *Donovan* v. *Gathe,* 3 Colo. App. 151, 32 Pac. 436;

*Cobb* v. *Haskel,* 14 Me. 303, 31 Am. Dec. 56; *Burchinell* v. *Weinberger,* 4 Colo. App. 6, 34 Pac. 911; *Watkins* v. *Petefish,* 49 Ill. App. 80; *State* v. *Durant,* 53 Mo. App. 493; *Byxbee* v. *Dewey,* 5 Cal. Unrep. 544, 47 Pac. 52.

The following cases also affirm the general rule that in order to avoid the conclusive presumption of fraud in cases such as this, the vendee must take such possession of the property as to give unequivocal notice and advertisement to all the world of the change of possession: *Revercomb* v. *Duker,* 74 Mo. App. 570; *Kennedy* v. *Conroy,* 5 Cal. Unrep. 337, 44 Pac. 795; *Lloyd* v. *Williams,* 6 Colo. App. 157, 40 Pac. 243; *Howard* v. *Dwight,* 8 S. D. 398, 66 N. W. 935.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action in claim and delivery. The controversy is between W. H. Taylor, who claims to have purchased the property from C. R. Buffington, the original owner, on the one hand, and, on the other, the Malta Mercantile Company, a corporation, which claims to have attached the property in an action by it against Buffington and while Buffington was still the owner and in possession of the property, and to have purchased the same at sheriff's sale upon execution. Upon the trial of the cause the plaintiff offered evidence tending to show the circumstances under which he purchased the property, and what he did with reference to it. At the conclusion of his evidence the court granted a nonsuit. The appeal is from the judgment. The bill of exceptions presents all the evidence received and that offered and rejected.

1. Buffington, a witness for plaintiff, was asked whether at any time after he gave the bill of sale to plaintiff he had been up to the property or exercised any acts of ownership over it. [1] An objection by defendant was sustained, and error is predicated on the ruling. Appellant is not in a position to insist upon the specification: First, because he did not make any offer of proof and the answer which the witness would have given is not apparent (*Frederick* v. *Hale,* 42 Mont. 153, 112 Pac.

70; *Forquer* v. *North,* 42 Mont. 272, 112 Pac. 439; *Bean* v. *Missoula Lumber Co.,* 40 Mont. 31, 104 Pac. 869; *Tague* v. *John Caplice Co.,* 28 Mont. 51, 72 Pac. 297); and, second, without objection the witness was afterward permitted to say, "I have not been up to Strater to that shearing plant since the execution of the bill of sale." Error in the exclusion of offered testimony [2] is cured by the subsequent admission of substantially the same evidence. (*Frederick* v. *Hale,* above; *State* v. *Van,* 44 Mont. 374, 120 Pac. 479.)

2. Plaintiff offered to prove that the bill of sale which he received from Buffington for this property was filed with the county clerk and recorder of Valley county, and that on or about July 30, 1910, he made application to an agent of an insurance company for insurance upon the property in his own name. Each of these offers was properly refused. If plaintiff had been permitted to prove the facts, he would not have been any better off. They would not have constituted, nor would they have assisted in constituting, the acts performed by plaintiff and Buffington a delivery of the possession of the property in controversy. At best they would have reflected only [3] upon the good faith of the parties to the sale, and that question is not open to investigation in an action wherein the sale is attacked solely on the ground of fraud in law, under section 6128, Revised Codes. (*Morris* v. *McLaughlin,* 25 Mont. 151, 64 Pac. 219.) Section 6130 takes this transaction out of the category of those subject to explanation upon the theory of good faith and fair dealing. In *Gehlert* v. *Quinn,* 35 Mont. 451, 119 Am. St. Rep. 864, 90 Pac. 168, the transaction in question was attacked on the ground of fraud in fact, as well as fraud in law, and therefore the question of good faith was involved, and the admission in evidence of the fact that the bill of sale from the seller to the buyer had been filed for record was proper.

3. Is the evidence sufficient to make out a *prima facie* case in favor of plaintiff? The controversy rages around the application of the rule of law stated in section 6128, above, which, so far as applicable to this case, reads as follows: "Every transfer of personal property * * * is conclusively presumed, if

made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession.''

It is conceded that Buffington was the owner and in possession of the property until about the last of July, 1910; that he was indebted to the defendant company at that time and for several months thereafter; that defendant commenced an action against him on August 8, 1910, attached this property on August 11, and purchased it later at sheriff's sale upon execution in the same action. The only question for determination now is: Was there such a delivery of possession by Buffington to Taylor prior to August 11, 1910, followed by an actual and continued change of possession of the property, as to satisfy the demands of section 6128 above? Much of the record is given up to evidence which is wholly irrelevant to the issue made by the pleadings. There was not any attack upon the sale from Buffington to Taylor for fraud in fact. Assuming, as we do, that there was a sale as claimed by plaintiff, still evidence of the consideration [4] paid for the property by Taylor, or evidence of the good faith of the parties to the sale, or evidence of any or all of those facts and circumstances which are usually emphasized in actions where actual fraud is charged, was entirely irrelevant. (*Morris v. McLaughlin,* above.) Viewing the relevant evidence—and there is very little of it—in the light most favorable to the plaintiff, and assuming that it proves every fact which it tends to prove, and we are confronted with this situation: The prop- [5] erty, a sheep-shearing plant at Strater, consists of a frame building used as a cookhouse; another frame building used as the shearing-house, in which was the shearing machinery—shafting, belts, pulleys, *etc.*—some scales, a gasoline engine, corrals, panels, *etc.* Sometime about the last of July, Buffington, who then owned and was in possession of this property, sold it to Taylor. Three witnesses only were examined. E. L. Wallace, cashier of the bank at Saco, testified to the conversation which

he heard between Buffington and Taylor which resulted in the sale, and to the directions given by Taylor to Buffington to go up to the plant and "see that everything is put in order and locked up." He testified to other facts and circumstances which are not material to this inquiry, but he did not testify to anything further done by Buffington or Taylor looking to a delivery of the property or to a change of its possession. Taylor, the plaintiff, testified to the conversation had with Buffington about the end of July, 1910, which terminated in a sale of the shearing plant by Buffington to him. He gave much immaterial evidence as to the business transactions between him and Buffington prior to the time of the sale and the elements which entered into the consideration for this property. He testified that after their negotiations were concluded he directed Buffington to pile up the panels so that he could get insurance on the property, and that afterward in passing on the train he observed that the panels had been piled. He testified that on August 9 he and Buffington went to Glasgow and there had a bill of sale of the property drawn and executed. He testified further: "I never went down there at any time for the purpose of assuming possession of the property. Q. After your agreement with Mr. Buffington you never pretended in any way to assume any control over the property, did you; just left it there as he had piled it up, and that is all you know about it, isn't it? A. Yes, sir. (Redirect examination.) Q. State whether or not it was practicable to move that property. A. No, it wouldn't be. I gave Mr. Buffington directions what to do with the keys to that property when he had stored the machinery and piled up the panels. I ordered him just to leave them there at the Mercantile store." This is all the evidence given by the plaintiff which tends to disclose the acts of the parties with respect to the delivery or change of possession of the property. Buffington testified to the verbal negotiations which resulted in the sale of this property to Taylor; that according to Taylor's directions he, with other men in his employ, took down the shearing machinery, hauled it over to the cookhouse, stored it, locked that house, and sent the keys to the Saco Mercantile Company's office for Mr. Taylor;

that he never saw the keys afterward and never was up to the
plant after the day upon which the bill of sale was executed.
On cross-examination, however, this witness qualified his testi-
mony to the extent of saying that he was not the last one at the
plant when the machinery was stored; that other men were left
there; that he instructed them to lock up the cookhouse; that
afterward the keys were brought to him; and that he gave them
to Burton or McKinney to take to the Saco Mercantile Company.

Does this evidence prove or tend to prove an immediate deliv-
ery of the property by Buffington to Taylor, and an actual and
continued change of possession within the meaning of section
6128? We think not. Assuming for the purposes of this ap-
peal—as counsel for appellant do—that the character of this
property is such that manual delivery was not practicable, coun-
sel then insist that a symbolical delivery of such property may
satisfy the demands of the statute, and *Western Mining Supply
Co.* v. *Quinn,* 40 Mont. 156, 135 Am. St. Rep. 612, 20 Ann. Cas.
173, 28 L. R. A. (n. s.) 214, 105 Pac. 732, is cited to support this
contention. In that case we held that the delivery by the seller
to the buyer of the keys to a warehouse in which was locked
heavy mining machinery, lumber, *etc.,* was a sufficient delivery
of possession of the property to satisfy the statute above. We
do not know of any case where the rule of the statute has been
given a more liberal construction; but the evidence in this in-
stance falls far short of establishing any delivery at all, manual
or symbolical. It does not appear that the cookhouse in which
most of this property was stored was in fact locked, and, if it
was—which is a mere surmise—there is not any evidence that
the keys were delivered to Taylor, the purchaser. All that can
be said of the evidence is that it shows that Buffington left
orders with the men at the plant to lock up the machinery in
the cookhouse and that thereafter he delivered the keys to Bur-
ton or McKinney to deliver to the Saco Mercantile Company.
But there is not an intimation in the record that the men obeyed
Buffington's orders, or that the cookhouse was actually locked,
or that the keys were ever delivered to the Mercantile Company
or to Taylor, the purchaser. Taylor was a witness in his own

behalf, but he failed to state that he ever received the keys or knew whether or not the property was locked up or otherwise secured. While there may be a symbolical delivery of possession of a building and its contents or the contents of a building, it is asking altogether too much to have this court declare that the provisions of section 6128, above, are met by evidence of this character.

In *Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707, the horses in controversy, with others, were gathered from the public range, the purchased ones separated from the others, branded with a distinguishing brand, and then returned to the range. This court held that there was a sufficient delivery and change of possession to meet the requirements of the statute. Upon a similar state of facts a like conclusion was reached in *Cady* v. *Zimmerman,* 20 Mont. 225, 50 Pac. 553. But in *Dodge* v. *Jones* this court quoted with approval from *Stevens* v. *Irwin,* 15 Cal. 503, 76 Am. Dec. 500, the following: "The delivery must be made of the property; the vendee must take the actual possession; that possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. It must be such as to give evidence to the world of the claims of the new owner. He must, in other words, be in the usual relation to the property which owners of goods occupy to their property. This possession must be continuous—not taken to be surrendered back again—not formal, but substantial." This doctrine was repeated in *Morris* v. *McLaughlin,* above, decided after *Cady* v. *Zimmerman,* and in that case the further language of the California court in construing a statute like our 6128 was adopted: "The word 'actual' was designed to exclude the idea of a mere formal change of possession, and the word 'continued,' to exclude the idea of a mere temporary change."

The motives which prompted Buffington and Taylor in their transaction are not the subject of inquiry here. We may assume that they acted in perfect good faith, intending to accomplish a legitimate object in a lawful manner; but, because they failed to make an immediate delivery of the property and to

follow such delivery by an actual and continued change of possession, the statute declares their sale void as against the Malta Mercantile Company, a creditor of Buffington. For this reason the evidence produced fails to make out a case to go to the jury, and the trial court properly granted the nonsuit.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur. ₀

