WELLS, EXECUTRIX, ET AL., APPELLANTS, *v.* ESGAR, SHERIFF, RESPONDENT.

(No. 5,571.)

(Submitted January 12, 1925. Decided February 7, 1925.)

[233 Pac. 123.]

*Conversion—Transfer of Grain—Delivery—What Does not Constitute.*

1. The mere statement, "It is yours," made with reference to a quantity of grain by the transferor to the transferee in an attorney's office miles away from where the grain was stored, the transferee doing nothing whatever to take possession, which remained in the transferor, was not such a delivery as is contemplated by section 8604, Revised Codes of 1921, and therefore insufficient as against an attaching creditor of the transferor.

*Appeal from District Court, Gallatin County, in the Ninth Judicial District; Wm. E. Carroll, a Judge of the Second District, presiding.*

ACTION by Eva M. Wells, individually and as executrix of the estate of Nat G. Wells, deceased, against Charles E. Esgar,

Sheriff of Gallatin County. Judgment for defendant and plaintiff appeals. Affirmed.

*Mr. C. E. Carlson* and *Mr. W. R. C. Stewart,* for Appellants, submitted a brief; *Mr. Carlson* argued the cause orally.

Citing: *O'Gara* v. *Lowry,* 5 Mont. 427, 434, 5 Pac. 583; *Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707; *Webster* v. *Sherman,* 33 Mont. 448, 84 Pac. 878; *Western Min. Supply Co.* v. *Quinn,* 40 Mont. 156, 135 Am. St. Rep. 612, 20 Ann. Cas. 173, 28 L. R. A. (n. s.) 214, 105 Pac. 732; *Chestnut* v. *Sales,* 44 Mont. 534, 121 Pac. 481; *Puckett* v. *Hopkins,* 63 Mont. 137, 206 Pac. 422.

*Mr. Geo. Y. Patten,* for Respondent, submitted a brief and argued the cause orally.

Citing: 35 Cyc. 304; *Taylor* v. *Malta M. Co.,* 47 Mont. 342, 132 Pac. 549; *Dover Lumber Co.* v. *Whitcomb,* 54 Mont. 141, 168 Pac. 947; *Young* v. *Poole,* 2 Cal. Unrep. 748, 13 Pac. 492; *Etchepare* v. *Aguirre,* 91 Cal. 288, 25 Am. St. Rep. 180, 27 Pac. 668; *Seymour* v. *O'Keefe,* 44 Conn. 128; *Smith* v. *Champney,* 50 Iowa, 174; *Sleeper* v. *Pollard,* 28 Vt. 709, 67 Am. Dec. 741; *Dooley* v. *Pease,* 180 U. S. 126, 45 L. Ed. 457, 21 Sup. Ct. Rep. 329 [see, also, Rose's U. S. Notes]; *Brooklyn Cooperage Co.* v. *Cora etc. Mfg. Co.,* 137 La. 807, 69 South. 195.

MR. JUSTICE STARK delivered the opinion of the court.

Plaintiffs brought this action to recover damages for the alleged conversion of a one-half interest in 1,300 bushels of wheat. It developed at the trial that the wheat was grown on a farm located about five miles from Bozeman, which belonged to plaintiffs, and was occupied by one Sam Kellar under a contract for its purchase, which gave him the right of exclusive possession and provided that he should turn over to

plaintiffs one-half the grain crop each year, to be applied on the purchase price.

On October 20, 1921, after the crop for that year had been threshed, Mrs. Wells went to Bozeman to see about her interest in it. She met Kellar and with him, accompanied by her son-in-law, Bonnell, went to the office of Attorney Kiester, in Bozeman, for the purpose of making an adjustment. Kellar had already sold a part of the grain, and in settlement for it gave Mrs. Wells checks for $783 as her share. There remained unsold the wheat involved in this action, which was in Kellar's possession, and stored in granaries on the farm. Kellar was uncertain whether he would be able to carry out his contract for the purchase of the land and before deciding what he would do, wanted to make a trip to Absarokce, and, if he was unable to raise the money there, intended to turn the place back to plaintiffs.

After settlement had been made for the grain that had been sold, the parties proceeded to dispose of the wheat left in the granaries, and what transpired in that connection was related by the witness Bonnell as follows: "After he gave her these checks, he said: 'Now, Mrs. Wells, a balance of the grain is in the granary, and I will turn your part over to you right now.' And he says: 'I will help you make the division at any time after I come back from my son's in the eastern part of the state.' Mrs. Wells told him that we would leave the— He says: 'I will haul the grain or deliver it any place you say.' She says: ' I will leave the grain in the granary a while, as we might perhaps use some of it for seed or feed.' "

Mrs. Wells testified, in reference to the transaction, that Keller said: " 'It is yours right now, and you can measure it up any time you want to.' I told him that I would just leave it until he came back, and then I would know if he was going to remain. I would have to sell it or—otherwise I might need it if I were going to stay there. I might need it for seed or for feed. The understanding was that when he came back he would haul it if I wanted it hauled." And on cross-examina-

tion she stated: "When I went upstairs to Mr. Kiester's office, Mr. Sam Keller verbally turned over half of the crop to me—half of this wheat. That is all there was to it. He paid me half of the wheat that had been sold, and half of the other he delivered to me that day. He said to me: 'It is yours.' He could not say any more than that, could he? He said that it was mine. The whole thing then was finished. I do not recall that there was anything else done, only that he delivered it that day to me. Simply saying, in the presence of Mr. Kiester, Mr. Bonnell, and I, that it was mine, that that half was to be mine, was all he could do. As a matter of fact, that was all he did."

The parties then separated, and Mrs. Wells remained in Bozeman for several days. She did not go out to the land, and did nothing in the way of taking possession of the wheat in the granaries. Kellar remained in possession of the land and of the wheat in the granaries.

Two days later, on October 22, 1921, the defendant, as sheriff of Gallatin county, under writs of attachment duly issued out of the district court, in two actions instituted against Kellar, levied upon and took into his possession the wheat in question. Judgment was subsequently obtained against Kellar in these actions, writs of execution issued thereon, the wheat sold and the proceeds applied to their satisfaction. No other facts material to a determination of the appeal were developed at the trial.

At the close of the testimony the defendant moved for a directed verdict. The motion was granted, judgment was en-
[1] tered in his favor, and the plaintiffs have appealed therefrom. Plaintiffs assign as error the action of the court in directing the jury to return a verdict in favor of the defendant, and state: "The only question we desire to present to the court is whether or not the evidence is sufficient to constitute a delivery of the grain in question."

So far as applicable to this case, section 8604, Revised Codes of 1921, provides: "Every transfer of personal property

[72 Mont. 333.]

\* \* \* is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession.''

The above section has frequently been before this court on the question of what acts constitute a sufficient delivery and continued change' of possession to satisfy. Many of these cases will be found cited in *Taylor* v. *Malta Merc. Co.,* 47 Mont. 342, 132 Pac. 549, and *Dover Lumber Co.* v. *Whitcomb,* 54 Mont. 141, 168' Pac. 947. In the latter case it is said: ''The purpose of the statute is the prevention of frauds. It requires the surrender of control by the vendor and the assumption of possession by the vendee. Mere words are not sufficient to constitute the delivery contemplated.''

The above-quoted language is decisive of this appeal. Here there was no semblance of a delivery of the wheat. To hold that Kellar's mere statement to Mrs. Wells, ''It is yours,'' in reference to wheat that was located five miles from the place where the conversation took place, constituted a sufficient delivery to satisfy the statute, would not be a construction of the statute, but its abrogation.

An examination of *O'Gara* v. *Lowry,* 5 Mont. 427, 5 Pac. 583, cited and relied upon by counsel for plaintiffs, shows that the facts in that case were so wholly different from those here involved that the language used has no application to the instant case.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY and MATTHEWS concur.

MR. JUSTICE GALEN, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.