STATE EX REL. URTON ET AL., APPELLANTS, *v.* AMERICAN BANK & TRUST CO. ET AL., RESPONDENTS.

(No. 5,822.)

(Submitted January 12, 1926. Decided February 8, 1926.)

[243 Pac. 1093.]

*Banks and Banking—County Depositaries—Surety Bonds—Lack of Approval—Nonliability of Sureties—County Commissioners—Minutes—Statutes—Estoppel.*

Banks and Banking—County Depositaries—Approval of Bonds by Board of County Commissioners as Entity Required.
1. The bond required of county depositaries under section 4767, Revised Codes, as amended by Chapter 89, Laws of 1923, must be approved by the board of county commissioners as an entity, its approval by the chairman of the board being insufficient.
Board of County Commissioners—Minutes—Parol Evidence not Admissible to Contradict Record.
2. Where a public board, such as the board of county commissioners, has made a record of its action on a matter submitted to it, parol evidence is not admissible to vary or contradict it.
Same—Actions—Absence of Minute Entry—Oral Testimony to Show Action—Admissibility.
3. *Quaere:* Is oral testimony admissible to show that a municipal board acted in a particular way on a given subject, in the absence of a minute entry which it was required by law to make but did not make?
Appeal from Judgment in Law Action Tried by Court—Insufficiency of Evidence—Burden on Appellant to Show, What.
4. On appeal from the judgment in an action tried by the court the appellant has the burden of showing that the record will not sustain the conclusion of the court upon any admissible theory.
Banks and Banking—Depositary Bonds—Approval—Evidence—Insufficiency.
5. In an action on a bond furnished a county under the Depositary Act which had been returned by the board of county commissioners

---

2. See 10 R. C. L. 1028.

as not needed and canceled but subsequently without the knowledge of the sureties thereon redelivered to the board, evidence reviewed and *held* sufficient to justify the conclusion of the court that the bond had not been approved by the board on a certain day as contended by the board.

Appeal from Judgment in Law Action Tried by Court—Insufficiency of Evidence—Affirmance, When.

6.   In an action at law the judgment of the trial court will not be reversed for insufficiency of the evidence if there is any substantial evidence to support it.

Banks and Banking—Surety Bonds—County Depositary not Officer and Bond not Official Bond.

7.   A depositary of public funds is not an officer and a depositary bond is not an official bond within the meaning of section 484, Revised Codes of 1921, providing that if there are any defects in the approval or filing thereof, *etc.*, the bond shall not be void so as to discharge the officer or his sureties.

Same—Amendment of Statute Relating to Official Bonds Held not to Apply to Depositary Bonds.

8.   *Held*, that neither by adoption in 1909 of the Codes of 1907 nor by adoption of the Codes of 1921 by Chapter 54, Laws of 1925, may the legislature be said to have intended to approve an amendment to section 1084 of the Codes of 1895 with relation to bonds of officers made in 1899 declaring⁰ the section applicable to all bonds required by law, which amendment was held invalid and by inadvertence of the Code commissioner included in the codification of 1907 as section 412, and again included in the Codes of 1921 as section 503; hence a depositatry bond, not being an official bond (see par. 7 above), was not affected by the attempted amendment thus erroneously carried forward into the Codes.

Same—County Depositary Bonds—Approval—Special Statute Controlling.

9.   Chapter 89, Laws of 1923, providing that a county depositary bond shall not be effective until approved by the board of county commissioners, in the manner prescribed, is a special statute and controls even though there be a general statute on the subject inconsistent with it.

Same—County Depositary Bond Returned Without Approval—Effect on Contract of Sureties.

10.   Where a depositary bond had not been approved, its return amounted to a rejection and after the sureties had been informed of the action of the board of county commissioners, it was not within the power of the board upon its resubmission by the bank without the knowledge of the sureties to thereafter approve it, a bond being a contract which requires the assent of both parties to the same thing at the same time.

Same—Action on Depositary Bond—Sureties—Estoppel—Evidence—Insufficiency.

11.   Evidence that sureties on a depositary bond were also directors of the bank furnishing it and attended meetings of its board of directors during the year in which the transactions were had resulting in its rejection and subsequent alleged approval, *held* insufficient to support the allegations of an estoppel to the effect that they knew county funds were deposited in the bank in reliance upon the bond, and made no objection thereto nor an effort to terminate their obligations thereon.

Appeal — Exclusion of Evidence — Subsequent Admission — Error not Predicable on Exclusion.

12.  Error cannot be predicated upon the exclusion of evidence at one stage of a trial, if the same evidence is admitted thereafter.

---

[1] Counties, 15 C. J., sec. 118, p. 466, n. 9, 10.  Depositaries, 18 C. J., sec. 58, p. 586, n. 65.

[2; 3] Counties, 15 C. J., sec. 121, p. 468, n. 55, 55 New.  Evidence, 22 C. J., sec. 1421, p. 1083, n. 59; sec. 1423, p. 1084, n. 67.

[4] Appeal and Error, 4 C. J., sec. 2662, p. 733, n. 88 New.

[5] Counties, 15 C. J., sec. 118, p. 467, n. 22.  Depositaries, 18 C. J., sec. 87, p. 597, n. 10.  Evidence, 22 C. J., sec. 70, p. 137, n. 84.

[6] Appeal and Error, 4 C. J., sec. 2853, p. 878, n. 82.

[7] Depositaries, 18 C. J., sec. 43, p. 579, n. 16; sec. 55, p. 585, n. 49; p. 586, n. 54 New.

[8] Statutes, 36 Cyc., p. 1068, n. 3.

[9] Depositaries, 18 C. J., sec. 58, p. 586, n. 65.  Statutes, 36 Cyc., p. 1151, n. 57.

[10] Bonds, 9 C. J., sec. 1, p. 7, n. 1; sec. 28, p. 18, n. 84.  Contracts, 13 C. J., sec. 46, p. 263, n. 74; sec. 48, p. 264, n. 80.  Depositaries, 18 C. J., sec. 58, p. 586, n. 68 New.

[11] Depositaries, 18 C. J., sec. 87, p. 597, n. 10.  Estoppel, 21 C. J., sec. 260, p. 1247, n. 46; sec. 269, p. 1252, n. 93.

[12] Appeal and Error, 4 C. J., sec. 2999, p. 1014, n. 34.

*Appeal from District Court, Missoula County; James· M. Self, Judge.*

ACTION by the State, on the relation of Harry Urton, successor to Roy B. Wilbur, as County Treasurer of County of Missoula, and others against the American Bank & Trust Company and others.  Judgment for defendants and plaintiffs appeal.  Affirmed.

*Mr. L. A. Foot,* Attorney General, *Mr. A. H. Angstman,* Assistant Attorney General, *Mr. Dwight N. Mason,* County Attorney of Missoula County, and *Mr. Walter L. Pope,* for Appellants, submitted an original and a reply brief; Mr. Pope argued the cause orally.

*Messrs. Murphy & Whitlock* and *Mr. D. J. Heyfron,* for Respondents, submitted an original and a supplemental brief; *Mr. M. N. Whitlock* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

During all the time involved in this controversy, our depositary law required every county treasurer to deposit public funds in his possession or under his control in banks in the county designated by the board of county commissioners. It provided that the deposits should draw interest and should be secured by such surety bonds, personal bonds, or public securities, warrants, *etc.*, as the board of county commissioners might prescribe, approve and deem sufficient for the purpose intended. (Sec. 4767, Rev. Codes 1921, as amended by Chap. 89, Laws of 1923.)

Early in 1923, the American Bank & Trust Company of Missoula, which had been designated a depositary, had on deposit some of the public funds, and it had an effective depositary bond upon which the Maryland Casualty Company was surety. On March 24, 1923, the bank procured an additional bond (the bond in controversy), upon which the individual defendants Gibson, Peterson, Dragstedt and La Casse were sureties, and this bond was tendered to the board. When it came into the possession of the county treasurer about April 5, it bore the indorsement: "Examined, approved, and ordered filed, April 5, 1923. R. W. Angevine, Chairman Board of County Commissioners."

A meeting of the board was held on July 21 and the minutes of that meeting recite: "The board examined the personal bonds of the banks acting as depositaries of Missoula county and ordered same returned as the deposits were fully covered by surety bonds." At the same time the bond in controversy was indorsed: "Canceled and returned. R. W. Angevine, Chairman of the Board," and was delivered to the treasurer, with directions to return it to the bank, which was done. The bond with this indorsement upon it was exhibited by the bank to each of the sureties who was informed that he was released, or to that effect, but some time thereafter the bond

was returned to the treasurer by the bank without the knowledge or consent of any of the sureties.

The bond of the Maryland Casualty Company expired on November 15, and immediately before that date the bank was informed that the treasurer would withdraw his entire deposit, unless satisfactory security was forthcoming. Thereupon the bank delivered to the treasurer county warrants of the value of $21,181.68, and the deposit was permitted to remain in the bank.

On November 28 the county commissioners held a meeting, and the following proceedings were had, as disclosed by the minutes:

"The board examined the bond of the American Bank & Trust Company, one of the depositories of Missoula county, and accepted said bond and approved the same, as to the sufficiency of the sureties thereon, and the minute entry of July 21, 1923, is corrected to conform hereto.

"It was moved by Chairman Angevine, and seconded by Commissioner Watson, that the said bond be accepted and approved.

"Motion carried."

It is conceded that these entries refer to the bond in controversy, and that the action taken by the board was without the knowledge or consent of the sureties.

On December 12 the chairman of the board addressed to defendant Dragstedt the following letter:

"Dear Sir: This is to give you notice that the county of Missoula, acting through its board of county commissioners, on the 28th day of November, 1923, formally approved and accepted that certain bond of date March 24, 1923, on which you appear as surety and which was given by the American Bank & Trust Company to the treasurer of Missoula county, and that by reason of said action in approving the same you

are therefore held liable and fully responsible for the amount thereon for which you have signed.

"Yours very truly,

"R. W. ANGEVINE,

"Chairman Board of County Commissioners."

On January 22, 1924, the following notice was served upon each of the sureties:

"Mr. G. F. Peterson, Mr. A. J. Gibson, Mr. J. T. La Casse, Mr. Chas. R. Dragstedt:

"Gentlemen: It has been called to the attention of the board of county commissioners of Missoula county that the bond furnished by the American Bank & Trust Company, a corporation of Missoula, Montana, covering the deposit of county money made in said bank, which bond was dated March 24, 1923, and expires on the 31st day of March, 1925, upon which you have signed as a surety in the sum of $25,000 each, that official notice was not properly served upon you of the action taken by the board of county commissioners upon said bond.

"Now, therefore, you are hereby given a notice that said bond, together with sureties thereon, in the amounts above named, was finally approved on the 28th day of November, 1923, and that each and every one of you are held by said Missoula county as such sureties in the amount for which you have individually signed.

"By order of the board of county commissioners of Missoula county.

"[Seal]    W. J. BABINGTON,

"Clerk of the Board of County Commissioners."

Three days later (January 25, 1924), the bank failed in business, was closed by the proper authorities and thereafter a receiver was appointed to wind up its affairs.

This action was instituted to recover on the bond the amount of the public funds in the bank on the day it closed. In the complaint plaintiffs allege that the bond in controversy was

approved by the board on April 5 and November 28, 1923. In the answer defendants deny that it was ever approved at any time. The trial court concluded that it was not approved prior to November 28 and that it never became a binding obligation. A judgment was rendered and entered in favor of the defendants, without prejudice, however, to the right of the plaintiffs to proceed against the bank and receiver in an appropriate action. From that judgment plaintiffs appealed.

The authority to approve a depositary bond is lodged exclusively in the board of county commissioners—the entity (*Commissioners* v. *McCormick*, 4 Mont. 115, 5 Pac. 287; *Williams* v. *Board*, 28 Mont. 360, 72 Pac. 755; *O'Brien* v. *School District*, 68 Mont. 432, 219 Pac. 1113), and the approval by the chairman alone would be ineffective for any purpose (*Commissioners* v. *McCormick*, above).

The statute which prescribes the general duties of the board provides: "The board of county commissioners must cause to be kept: A 'minute book' in which must be recorded all orders and decisions made by them, and the daily proceedings had at all regular and special meetings." (Sec. 4461, Rev. Codes 1921.) In addition thereto, the depositary law (Chap. 89, Laws of 1923, above) provides: "It shall be the duty of the board of county commissioners * * * upon the acceptance and approval of any of the above mentioned bonds or securities, to make a complete minute entry of such acceptance and approval upon the record of their proceedings."

The record discloses that the board was in session on April 5 but the minutes of that meeting do not make mention of this bond or its approval; indeed, the only reference to its approval is found in the minutes of the meeting of November 28 and subsequently.

At the trial, and over the objections of defendants, parol evidence was admitted *pro forma*, to the effect that the bond was approved by the board on April 5; the court reserving its final decision as to the admissibility of the evidence until

the close of the trial. The record fails to show any specific ruling, but from the conclusion reached by the court it is made manifest that the oral testimony touching the approval was rejected either upon the theory (a) that it was not admissible, or (b) upon the theory that the evidence in its entirety preponderates in favor of the conclusion that the bond was not approved prior to November 28.

(a) It is the contention of defendants that parol evidence was [2, 3] not admissible to show that the bond was approved on April 5, and the decision of this court in *State* v. *State Board*, 56 Mont. 413, 460, 185 Pac. 708, 186 Pac. 697, to that effect is cited. It is insisted that, if the rule is properly applicable to the state board of examiners, it should be applied with full force and vigor to the board of county commissioners in approving a depositary bond, in view of the specific requirement of Chapter 89, Laws of 1923. However, the language of this court referred to above was employed in a case in which there was a minute entry concerning the subject of the controversy, and it is unquestionably the rule that, where a record is made, parol evidence is not admissible to vary or contradict it. (*Montana Ore Pur. Co.* v. *Maher*, 32 Mont. 480, 81 Pac. 13.)

Whether, in view of the command of Chapter 89, Laws of 1923, it is competent to introduce oral testimony to show an approval, where the minutes of the board meeting are altogether silent upon the subject, is a matter we need not stop to consider further than to observe that the authorities appear to be in hopeless conflict with respect to the matter. For the purpose of this appeal only we adopt the contention of plaintiffs, and assume that the evidence was admissible.

But it does not suffice for plaintiffs to say that the trial [4] court may have rejected the oral evidence upon the theory that it was not admissible, they must assume the burden of showing that the record will not sustain the conclusion of

the court upon any admissible theory. (*Dover Lumber Co.*
v. *Whitcomb,* 54 Mont. 141, 168 Pac. 947.)

(b) Assuming that the court gave due consideration to
[5] the oral testimony, the question then arises: Will the
record sustain the conclusion that the bond in controversy
was not approved prior to November 28, 1923?

When the court came to formulate its conclusions, it was
confronted with this situation: Each of the three commissioners
had testified that the bond was approved by the board at its
meeting on April 5. The trial of this cause commenced on
April 24, 1925, so that more than two years had elapsed, and
thirty or more meetings of the board had been held, between
April 1, 1923, and the date of the trial. The court's con-
clusion does not imply that any of the commissioners willfully
testified falsely. In weighing the testimony the court could
properly consider the fallibility of human memory and the
improbability that the commissioners could remember, with
any degree of accuracy, every transaction had in the numerous
board meetings, or any particular transaction had in a meet-
ing held more than two years prior to the time when the
testimony was given. At best, the witnesses could speak only
from their recollection, and, as opposed to their recollection
of what transpired, were these circumstances:

If the bond were approved on April 5, the law imposed
upon the board the duty to make a complete record of the ap-
proval in the minutes, and the law raises the presumption
that whatever duty was present was performed. (Sec. 10606,
Rev. Codes.) .Hence, when it was disclosed that the minutes
of April 5 were silent upon the subject, the court might well
treat the omission as strongly indicative of the fact that no
action upon the bond had been taken at that time.

The treasurer testified that deposits were made between
April 5 and July 21 in reliance upon this bond, but the record
discloses that the amount of the deposit on April 5 was de-
creased constantly thereafter by withdrawals, until on July

21 it amounted to less than $16,000, and was amply secured by the Maryland Casualty Company bond.

On July 21 the board ordered all personal bonds of depositaries returned, and the bond in controversy was marked "Canceled and returned," and was, in fact, returned to the bank. The minutes of that date indicate a board policy, disclosed more fully in the evidence, to require surety company bonds or public securities, and to reject personal bonds. But with respect to this particular bond in controversy, the commissioners testified that the security was not satisfactory; that is to say, that the property statements required of the sureties were not satisfactory; that this was one reason for returning this bond; and that it was the intention of the board not to rely upon it as security for the public funds deposited in the bank. The evidence discloses further that all deposits made after July 21 and up to November 14 were made in reliance solely upon the Maryland Casualty Company bond; that the deposits made between November 15 and November 21 were in reliance solely upon the security furnished by the county warrants; and that at no time between those dates did the total deposit amount to as much as the value of the warrants.

On November 28 the board solemnly declared by its record that it had approved this bond on that day, and the statement was reiterated on December 12 by the chairman of the board in his letter to defendant Dragstedt, and again reiterated by the board on January 22, 1924, in the notice served upon the sureties. It is especially worthy of note that there is not a reference in any of these documents to the meeting of April 5; no pretense that the bond in controversy had ever been approved prior to November 28.

This is an action at law, and it is the rule in this jurisdiction that the judgment of the trial court will not be reversed for insufficiency of the evidence, if there is any substantial evidence to support it. (*Torgerson* v. *Stocke,* 72 Mont. 7, 230 Pac. 1096.)

In view of this record evidence, it cannot be urged seriously [7] that the trial court was not justified in concluding that the bond was never approved prior to November 28, 1923.

But plaintiffs insist that, even though the bond was not approved, it was nevertheless binding upon the sureties, or, if not binding upon all of them, it was at least binding upon defendants Peterson and La Casse.

Upon the first proposition counsel for plaintiffs cite section 484, Revised Codes of 1921, as follows: ''Whenever an official bond does not contain the substantial matter or conditions required by law, or there are any defects in the approval or filing thereof, it is not void so as to discharge such officer or sureties; but they are equitably bound to the state or party interested; and the state or such party may, by action in any court of competent jurisdiction, suggest the defect in the bond, approval, or filing, and recover the proper and equitable demand or damages from such officer and the persons who intended to become and were included as sureties in such bond.''

This statute has been in effect since 1895 (sec. 1066, Pol. Code 1895), and by its terms applies only to official bonds. A depositary of public funds is not an officer, and a depositary bond is not an official bond within the meaning of that statute.

In *Compton* v. *Marengo County Bank,* 203 Ala. 129, 82 South. 159, it is said: ''It is manifest, we think, that a depository, qualified as the Act prescribes, is not a public officer; is not merely a county treasurer by another name. Under that Act a depository is but a contractee. The depository pays the county interest on the daily balances, and engages to keep and pay out the funds lawfully committed to its care. The depository can receive no compensation other than the advantage derived from having the deposit. In fact. the theory of the Act in this respect is that the depository pays the county for the privilege of having the deposit. No term is

provided for an office or officer.   *   *   *   Indeed, in the light
of our governmental history, it is not perceivable how a cor-
poration could be constituted a public officer.  The bond exacted
by the Act contemplates only the 'safety of said deposits.'  It
is not an official bond in the sense such assurances are exacted
and given to secure generally the performance of all the
official duties a public officer is required to perform or dis-
charge.''   Other authorities sustaining this view will be found
cited in 18 C. J. 579.

But counsel for plaintiffs insist that the provisions of sec-
[8]   tion 484 above are made applicable to a depositary bond
by the terms of section 503, Revised Codes of 1921.

Section 503 appeared originally as section 1084, Article IX,
Chapter VII, Political Code of 1895, and read: ''The pro-
visions of this article apply to the bonds and undertakings
of receivers, executors, administrators and guardians.''  Article
IX was entitled ''Bonds of Officers.''  In 1899 an attempt
was made to amend section 1084 by adding the following:
''and to all bonds and undertakings required by law to be
given and approved by any court, judge, board, person or
body, and, except as to requirements of such approval, the
provisions shall apply to all bonds given or required by law
to be given in attachment proceedings, criminal actions or
proceedings, bail bonds, appeal bonds, and all bonds given or
required to be given in any legal proceedings or action in
any court of this state'' (Laws of 1899, p. 79); but the
amendment was declared to be invalid by this court in *Russell
v. Chicago, B. & Q. Ry. Co.*, 37 Mont. 10, 94 Pac. 488, 501.
While the decision in that case dealt only with an appeal bond, the
same reason for holding the amendment of 1899 invalid as
to an appeal bond would apply equally to a depositary bond.

In 1907 the legislature authorized the appointment of a
commissioner to codify the then existing laws of this state,
but expressly withheld from the commissioner the authority
to include any Act or part of Act declared invalid by the
supreme court.  (Chap. 85, Laws of 1907.)  In the prepara-

tion of the Codes of 1907 the commissioner inadvertently included the amendment of 1899 above, which had been declared invalid, and the section with the invalid amendment appeared as section 412, Revised Codes of 1907. In 1909 the legislature declared: "The division and arrangement into Codes, parts, titles, chapters, articles and sections of the Revised Codes of Montana of the year 1907, as reported by the code commissioner, appointed under the authority of Chapter 85 of the Laws of the Tenth Legislative Assembly of the state of Montana, are hereby approved, confirmed, legalized and made effectual and valid," *etc.* (Chap. 1, Laws of 1909.)

Bearing in mind that the legislature of 1907 had declared that any provision held to be invalid should not be included in the Codes; that the amendment of 1899, above, had been declared to be invalid before the compilation was completed, and that the invalid provision was included through inadvertence, it cannot be assumed that by the very general language employed in adopting the Codes of 1907 the legislature intended to approve a provision which the commissioner had been forbidden to include in the Codes.

There is not anything in the language employed in *Wheeler & Motter Merc. Co.* v. *Moon,* 49 Mont. 307, 141 Pac. 665, inconsistent with the views here expressed. An entirely different situation was presented in that case. It dealt with the codification of 1907 only so far as it comprised statutes which were in full force and effect at the time the Codes of 1907 were reported to, and acted upon by, the legislature of 1909.

In 1919 the legislature authorized the appointment of a commissioner to codify the laws in force at the conclusion of the seventeenth session of the legislative assembly, and required the commissioner to report all "inconsistencies, ambiguities, omissions, contradictions and imperfections" in the Codes of 1907, etc. (Chap. 195, Laws of 1919; Chap. 109, Laws of 1921.) In reporting the Codes of 1921 the commissioner included section 412, Revised Codes of 1907, as section

503, Revised Codes of 1921, but with the notation that so much of it as was comprised in the amendment of 1899 had been declared to be invalid.

By Chapter 54, Laws of 1925, it is declared:

"Section 1. That the Revised Codes of Montana of 1921 as compiled, numbered and arranged by the Code commissioner appointed by authority of Chapter 195 of the Laws of the Sixteenth Legislative Assembly of 1919, and as certified to by said Code commissioner are hereby, as to both form and substance, approved, legalized and adopted as the laws of Montana," *etc.*

"Section 2. All changes made by said Code commissioner in the language or arrangement of any law of the state embodied in said Codes and all additions of new sections made by said commissioner to said Code, are hereby legalized, approved and given validity."

It follows that so much of section 503, Revised Codes of 1921, as includes the amendment sought to be made in 1899 was never in effect prior to the approval of Chapter 54, Laws of 1925.

But there is ample reason for holding that the bond in controversy must have been approved in order to fix liability upon the sureties. The depositary law declares that a depositary bond must be approved by the board of county commissioners, and prescribes the manner in which the approval shall be evidenced. It then provides that, until such a bond is approved, no deposit shall be made in the depositary offering the bond. This is a special statute governing a particular subject, and, even if there were general statutes inconsistent with it, the special Act would control. (*Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454; *State* v. *Certain Intoxicating Liquors,* 71 Mont. 79, 227 Pac. 472.)

Under the very terms of the depositary law a depositary bond is not effective until it is approved, and this is the construction placed upon similar provisions elsewhere. (*Commonwealth* v. *Caldwell,* 224 Pa. 103, 73 Atl. 219; *St. Louis*

*County* v. *American L. & T. Co.*, 67 Minn. 112, 69 N. W. 704; *Franklin Bank* v. *Cooper*, 36 Me. 179; 18 C. J. 586.)

Since the bond in controversy had not been approved, the [10] return of it on July 21 amounted to a rejection, and, after the sureties had been informed thereof, it was not within the power of the board on November 28 to approve it and bind the sureties. A bond is a contract, and requires the assent of both parties to the same thing at the same time. (*Polich* v. *Severson*, 68 Mont. 225, 216 Pac. 785.)

In the reply plaintiffs undertook to plead an estoppel as [11] against the defendants Peterson and La Casse. It is alleged that they were directors of the bank, and as such knew that the county "treasurer was depositing money in said bank in reliance upon said bond, and said defendants made no objections thereto and made no effort to terminate their obligation thereon."

When defendant La Casse was upon the witness-stand, he was asked on cross-examination whether he was a director of the bank in the fall of 1923. An objection to the question was sustained, and counsel for plaintiffs then made the following offer of proof: "Let the record show that we offer to prove, by this witness, as a part of his cross-examination, that he was, during the year 1923, a director of the American Bank & Trust Company, and acted as such and participated in the meetings of that board, held from time to time during the year 1923, and particularly, that he participated in meetings held on the 30th of November, 1923, and on such occasions the affairs and conditions of the bank were discussed by the board of directors." The same proceeding was had with reference to the defendant Peterson and substantially the same offer of proof was made as to him.

We are of the opinion that the pleading is not sufficient to constitute an estoppel; but, in any event, the offered evidence falls far short of the allegation. It does not go further than to show that these two defendants were directors of the bank and attended meetings of the bank directors during 1923.

Later, during the trial, the evidence narrated in the offers was admitted as a part of the testimony of the witness Harrah, assistant cashier of the bank. It is elementary that error [12] cannot be predicated upon the exclusion of evidence at one stage of a trial, if the same evidence is admitted thereafter. (*Ackley* v. *Phoenix Ins. Co.*, 25 Mont. 272, 64 Pac. 665; *Taylor* v. *Malta Merc. Co.*, 47 Mont. 342, 132 Pac. 549.)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.

Rehearing denied February 23, 1926.